# BAUMHOFF v. ST. LOUIS & KIRKWOOD RAIL-ROAD COMPANY, Appellant, and ST. LOUIS UNION TRUST COMPANY.

### Division One, June 29, 1907.

1. **CORPORATION: Suit to Compel Issue of Stock.** Where the pecuniary value of corporate stock is not provable and where in consequence one may not have adequate damages at law, he is not remediless against those who withhold such stock as he is entitled to, but a suit for specific performance of a contract to deliver lies.

2. ——: ——: **Power of Law Court: Equity: Res Adjudicata.** Where a law court determined that plaintiff, in his suit for a contractor's lien, was entitled to a money judgment, and also under his contract to certain capital stock of defendant company, and awarded him execution to satisfy the money judgment, but found that the pecuniary value of the stock was not provable and awarded him no satisfaction for his established right thereto, because the arm of the law court was too short to give him a complete remedy, the matter is not so far *res adjudicata* that plaintiff may not bring a proceeding in the nature of an equitable execution to enforce that judgment at law, by the issue of the stock to him.

3. ———: ———: ———: ———: ———: This Case. Plaintiff by contract to construct a railroad was to receive two hundred and fifty thousand dollars in bonds, twenty-five thousand dollars in stock and five thousand dollars in bonus, and the stock and bonds were placed with a trust company to be delivered to him on the performance of the work. He sued the railroad company by a contractor's lien and joined the trust company as a defendant, and at the suit, after answer, the bonds, which had been delivered to him, were paid, and he then dismissed as to the trust company, and the railroad company saved no exception to the dismissal. Afterwards the railroad company asked leave to amend its answer so as to raise the question of defect of parties defendant, but leave was refused, the court saying: "I do not see how an order could issue to the trust company to turn over the stock to plaintiff." The court at the trial found full performance by plaintiff of his contract, awarded him a lien on the road for the $5,000 bonus with interest, adjudged that he was entitled to receive $25,000 of the paid-up stock of the railroad company, found that said stock was not shown to possess any pecuniary value, and awarded him no lien on the company's property therefor. *Held*, that plaintiff's right to receive the stock was established by that judgment, that no remedy for the enforcement of that right was afforded by that judgment, since the court possessed no equitable powers in that suit at law, and hence his right to satisfaction of his claim thereby established did not become *res adjudicata*, and that he is entitled to maintain a proceeding in the nature of an equitable execution based on that judgment to compel the railroad company and the trust company to issue to him the twenty-five thousand dollars of stock.

4. ———: ———: ———: Judgment in Lien Case. A judgment in a lien case determining that plaintiff was entitled to certain stock of defendant corporation established his absolute right to that stock, and all reagitation of that question was thereby concluded, as between plaintiff and defendant, in a subsequent suit to compel the delivery of the stock. But where the court in response to an instruction asked by defendant, went further and found that no damage for conversion of the stock could be enforced by way of a lien, and found that no pecuniary value was established for the stock, and was of the opinion that it could not grant relief in kind, the suit being one at law, it will not be held that the court undertook to assess plaintiff's damages on the stock at nothing, or that plaintiff was thereafter precluded from claiming the stock itself.

5. ———: ———: ———: ———: Different Object: Verdict as Evidence. Where the cause or object of the actions is different, though the point in dispute is the same in both, the prior

judgment is no bar to the subsequent action, but the verdict is matter of evidence to prove the point.

6. ———: ———: ———: ———: **Multiplicity of Suits.** The rule against the splitting of causes of action does not obtain where there is one contract but the performance is several. Plaintiff may bring his suit under his contract to establish his contractor's lien against defendant railroad company to enforce his right to certain money which by the contract was to be paid to him for performing certain construction work, and also to establish his right to certain certificates of the capital stock of defendant which by the same contract were also to be issued to him for performing that work, and he may subsequently bring his suit against the same defendant and against a trust company which held the stock in escrow, to compel the delivery of that stock to him. Though the two causes of action arose out of the same contract, the performance is several.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

AFFIRMED.

*Jefferson Chandler, T. M. Pierce* and *S. P. McChesney* for appellant.

(1) The court erred in holding that the former suit was not *res adjudicata,* and did not finally dispose of the suit in controversy. Railroad v. U. S., 168 U. S. 48; Weir v. Moreley, 99 Mo. 490; Hahl v. Sugo, 169 N. Y. 109; Hesser v. Johnson, 76 Pac. 320; Railroad v. Beebe, 18 Pac. 502; Folsom v. Clemens, 199 Mass. 473; Hausted v. Des Moines, 63 Iowa 36; Herriter v. Porter, 23 Cal. 385; Morey v. King, 51 Va. 383; Milroy v. Mining Co., 43 Mich. 231; Memmer v. Cary, 30 Minn. 458; Railroad v. Henlien, 56 Ala. 368; Tootle v. Kent, 76 Pac. 310; Mellier v. Dawson, 74 S. W. 953; Madden v. Smith, 28 Kan. 798. (2) The court erred in holding that plaintiff could split up his cause of action and could legally maintain the present suit. Hoffman v. Hoffman, 126 Mo. 497; Koenig v. Morrison, 44 Mo. App. 411; Railroad v. Traube, 59 Mo. 355; Comstock v.

Davis, 51 Mo. 569; Lumber Co. v. Agricultural, etc., 59 Mo. App. 24; Steinkamp v. McMannus, 26 Mo. App. 52; R. S. 1899, secs. 4249-4251; Lawrence v. Porter, 63 Fed. 64.

*Lehmann & Lehmann* for respondent.

(1) The judgment in the former suit cannot operate as a bar to this suit, because it was not a judgment upon the merits against plaintiff, but, on the contrary, determined the right involved in his favor. 2 Black on Judgments, sec. 693; Gould v. Railroad, 91 U. S. 526; Baldwin v. Davidson, 139 Mo. 118; Verhein v. Schultz, 57 Mo. 326; Winham v. Klein, 77 Mo. App. 36; Taylor v. Larkin, 12 Mo. 103; Wells v. Moore, 49 Mo. 229; Bell v. Hoagland, 15 Mo. 360; Springfield v. Plummer, 89 Mo. App. 515; Nickerson v. Stage Co., 10 Cal. 520; Vinal v. Const. Co., 53 Hun 547; Geary v. Bangs, 138 Ill. 77; Railroad v. Saxton, 7 N. M. 302; Sease v. Dodson, 34 S. C. 345. (2) A single cause of action cannot be split, but a single contract may give rise to several causes of action. William v. Kitchen, 40 Mo. App. 604; Hayden v. Logan, 9 Mo. App. 492; Richey v. Branson, 33 Mo. App. 418; Boyce v. Christy, 47 Mo. 70; Perry v. Dickinson, 85 N. Y. 345; Baker v. Titcomb, 32 Mass. (15 Pick.) 409. (3) Respondent having sued at law for the value of the stock, and his right thereto being established therein and recovery therefor not granted simply because the stock had no provable pecuniary value, he is not barred from bringing an action in equity for specific performance. A judgment at law dismissing a suit because there is no remedy at law, is not a bar to an appropriate suit in equity. 2 Black on Judgments, sec. 715; Wiggins Ferry Co. v. Railroad, 142 U. S. 396; Northern Assurance Co. v. Grand View Bldg. Assn., 203 U. S. 106; Clark v. Blair, 14 Fed. 812; Massey v. McCoy, 79 Mo. App. 169; City of Oakland v. Oakland Water Front Co., 118 Cal.

160; State to use v. Bierwith, 47 Mo. App. 551.  (4) Even if the suit for specific performance could have been joined with the action to enforce the mechanic's lien, that it was not done is no bar to the present proceeding.  Garland v. Smith, 164 Mo. 1.  (5) A suit for specific performance to compel the delivery of stock having no provable pecuniary value, can be maintained, and for the very reason that its pecuniary value cannot be established.  Dennison v. Keasbey, 98 S. W. 546; 26 Am. and Eng. Ency. Law (2 Ed.), 122, note 3. (6)  This stock belongs to plaintiff, and therefore defendant should not take it.  Exodus, 20-15.

LAMM, J.—Plaintiff, suing in equity for specific performance, sought to compel defendant trust company to deliver to him a certain certificate No. 2 for two hundred and fifty shares of the full-paid, non-assessable capital stock of the defendant railroad company, held by the former in trust under a contract, and to compel the railroad company to transfer said shares of stock to him upon its books in the manner and form prescribed by its by-laws and for such further and general relief as may be deemed just and equitable.

The decree went as prayed.  The trust company made no defense so far as disclosed and abides the decree — the railroad company (hereinafter called defendant) alone appealing.

Defendant makes two questions here.  Thus: (a), "The court erred in holding that the former suit was not *res adjudicata,* and did not finally dispose of the suit in controversy;" and, (b), "The court erred in holding that plaintiff could split up his cause of action and could legally maintain his present suit."

To dispose of these propositions understandingly, it will be necessary to summarize here the history of a former case (called herein the "lien case"), viz:

In 1895 plaintiff and defendant entered into a con-

tract in writing whereby plaintiff agreed to build and
equip for defendant an electric railroad from the lim-
its of St. Louis city to a local point in St. Louis county,
known as Meramec Highlands, on a line shown by
plats called for and attached.   The scheme contem-
plated that defendant should issue three hundred bonds
of one thousand dollars each, due in twenty years, with
six per cent semiannual interest coupons attached, to be
secured by a good and sufficient first mortgage deed
conveying to said trust company its properties, real,
personal and mixed, and all its franchises, and should
deliver said mortgage deed, said bonds, with twenty-
five thousand dollars of its capital stock (duly endorsed
by the person in whose name said stock may stand
upon defendant's books), and also certain bonus sub-
scriptions, to the trust company, and the trust com-
pany at certain designated times should turn over
certain of said bonds to plaintiff as part payment for
building and equipping said road; and, upon full per-
formance, was to turn over to plaintiff enough more
bonds to make two hundred and fifty thousand dollars
in bonds, and turn over to him said twenty-five thou-
sand dollars of capital stock and so much as five thou-
sand dollars of said bonus, aggregating in cash, stock
and bonds two hundred and eighty thousand dollars,
in full consideration for due performance.

The bonds were issued, the mortgage deed execu-
ted and defendant caused to be issued a certificate for
twenty-five thousand dollars in face value of its full-
paid, non-assessable capital stock, to-wit, certificate
No. 2 for two hundred and fifty shares, standing in the
name of one Pitman, trustee, bearing his blank indorse-
ment, attested by its secretary, and did cause said
bonds, mortgage deed, stock certificate and bonus sub-
scription to come into the hands of said trust company,
to be held and dealt with under said construction and
equipment contract.

Presently, plaintiff entered upon performance, and from time to time received from the trust company part payment in bonds. There came a time when he had taken down his full quota of bonds, and, claiming full performance, demanded of the trust company full payment. But a squabble arising at that time between plaintiff and defendant, the trust company under notice from defendant not to make full payment, declined to do so, and a suit followed.

It will be convenient to follow with some particularity, not only the pleadings, but other parts of the record in such suit (the lien case), because in those pleadings and in that record (made part of the record of the case at bar) are laid away the facts relied upon by defendant to show *res judicata* and a splitting of a cause of action, *i. e.*, estoppel by record.

It seems defendant, having entered into possession of the railroad and its equipment, turned round and leased them to another corporation known as The Highland Scenic Railroad Company. In this fix, plaintiff took steps to fasten a contractor's lien upon the road-bed, rolling stock, etc., under article 4, chapter 47, Revised Statutes 1899, providing for liens of contractors, materialmen and laborers against railroads, designing to make said lien have precedence over said three hundred thousand dollars incumbrance. Having in due time filed his lien paper with the circuit clerk, and served defendant and the said Scenic Company with a copy, he sued to recover thirty thousand dollars as the balance due him under his contract, and to foreclose his lien — making three corporations, viz., both the present defendants (the St. Louis Union Trust Company being impleaded under its former name of "St. Louis Trust Company") and the Scenic Company, parties defendant.

The lien case was tried on an amended petition, wherein plaintiff pleaded the incorporation of the

three defendants, set forth his construction and equipment contract, averred due performance, alleged the facts entitling him to a lien, admitted the receipt of two hundred and fifty thousand dollars in bonds by way of part payment, averred non-payment of the stock and bonus through the wrongful interference of the railway company, and prayed judgment against the latter company (defendant here) for the sum of thirty thousand dollars balance due and unpaid under the terms of the contract and that such judgment be made a lien, that the same be foreclosed, and that the Scenic Company be compelled to show its interest and be bound by the judgment.    The petition also contained an averment that the lease to the Scenic Company was "a pretended lease," and another to the effect that the said capital stock was to be of the value of twenty-five thousand dollars, and still others questioning that defendant's stock was full paid and non-assessable as contemplated in the contract.

The trust company filed a separate answer admitting the contract, that plaintiff entered upon its performance, the filing of the lien paper, that the railroad company entered into possession and began operating the railroad, the deposit of the mortgage deed, bonds and stock certificate with it, and that the railroad company had notified it not to deliver the stock to the plaintiff; but it denied that it had refused such delivery and averred it was now willing to deliver, and had no knowledge or information sufficient to form a belief, and, therefore, could neither admit nor deny that the stock was to be of the value of twenty-five thousand dollars. After admitting some and denying other allegations not material here, the answer pleaded matter intended to defeat any preference of plaintiff's lien over the mortgage indebtedness, and immaterial matter relating to the bonus.    The bonds having gone into circulation, the life of this answer was the protection of said

mortgage indebtedness from any preference in favor of plaintiff for the unpaid contract price; and issue was joined by a reply.

Thereafter the Scenic Company filed its separate answer, directing itself in the first instance, to the allegation that it held under "a pretended lease." It says its lease was quite to the contrary, to-wit, "valid and lawful;" that plaintiff had abandoned his contract without substantial performance; had been paid an amount largely in excess of the value of his labor and material; that the lien paper damaged the property of the defendant as lessee, in that it stated that plaintiff's claim for a large sum of money and the account filed are "true and correct," whereas such statement was "wholly false and defamatory and libelous;" that plaintiff "without probable cause and well knowing that the statement filed by him (to-wit, the lien paper) was wholly false, did maliciously and for the purpose of injuring this defendant, destroying its credit and crippling it in the operation of said railroad, utter and publish said false statement," etc.; that it had desired to issue one hundred thousand dollars in bonds and borrow said amount, etc., and had been unable to do so by reason of the premises; that the market value of its bonds was destroyed and they became unsalable, etc., to its damage in the sum of twenty thousand dollars, for which it prayed judgment.

The railroad company filed its separate amended answer, admitting the contract but denying performance, and setting forth a schedule of faults, defaults, etc. Said answer admitted the execution and deposit with the trust company of the mortgage deed, bonds, stock and bonus subscriptions, averred that the stock was fully paid up and non-assessable within the purview of the scheme as understood and participated in by plaintiff, put plaintiff upon his proof on the allegations pertaining to the lien, admitted plaintiff obtained

possession of the bonds from the trust company but averred that he got possession wrongfully and that the trust company participated in such wrongful delivery, put in issue the allegation that the trust company had refused to deliver the stock to plaintiff but averred that plaintiff was not entitled to receive said shares of stock and that defendant had so notified said trust company, admitted notifying the trust company not to pay over five thousand dollars of the bonus subscription in its hands and made affirmative allegations pertaining to said bonus subscription not material here, admitted the lease to the Scenic Company, said it was an honest and valid lease, that said company had control and possession of the railroad, averred that time was of the essence of plaintiff's contract and that he had defaulted in that regard. The answer then pleaded the waiver of the mechanic's lien by the contract provisions for, and acceptance of, other security, to-wit, the bonds, bonus and stock aforesaid; and, finally, by an array of allegations relating to omissions and non-performance by plaintiff, the answer predicated damages in the amount of forty thousand dollars in failing to perform within the contract time, which damages it claimed from plaintiff alone, and one hundred and ten thousand dollars additional damages for non-performance and misperformance in other particulars and in wrongfully getting possession of said bonds. The latter item of damage defendant said accrued to it from the wrongful conduct of the trust company and plaintiff, *inter sese,* in delivery and accepting delivery of said bonds before the work was completed, in violation of the contract; and judgment was demanded against plaintiff and defendant trust company for that sum.

It seems that presently the mortgage securing the three hundred thousand dollar bond issue was released, payment being made through some refinancing scheme.

205 Sup—17

Thereupon the trust company conceived it had no further interest in the suit and filed its formal disclaimer of interest. Thereupon the plaintiff dismissed his suit as against said trust company. This was in January, 1898, and the following record entry was made: ''On motion of plaintiff by attorney it is ordered by the court that this cause be dismissed as to the defendant, the St. Louis Trust Company.''

We deem it of importance to observe right here that no exception was taken to the dismissal of the trust company, that the order of dismissal was never set aside, and that, though the dismissal was questioned and threshed over long afterwards at the trial of the lien case, yet, to all intents (for legal purposes), the trust company disappeared from that case as a party litigant in January, 1898. So that the lien case in its legal aspect stands precisely as if the trust company never had been a party.

Issue was joined by plaintiff's filing replies to the separate answers of the Scenic Company and the railroad company, and that was the status of matters for over a year and during several terms of court.

In May, 1899, the lien case came on for trial to the court without a jury. By the trend of the evidence introduced, all of which is re-introduced in the case at bar, and of the instructions given and refused (likewise appearing in this record) it appears that the lien case was tried by plaintiff, speaking on broad lines, on the theory that he had fully performed his contract and was entitled to his full pay, that he had received in bonds two hundred and fifty thousand dollars and that by reason of the allegations in his petition and the probative force of his proof sustaining the same he was entitled to a judgment for the balance of his pay withheld by the railroad company and which, he contended, was of the value of thirty thousand dollars, for which sum he was entitled to a lien and a foreclosure thereof;

and was tried on the theory of defendants that plaintiff had not performed, that heavy damages resulted from his non-performance and misperformance, that he, at least, had waived his lien; and, further, that as to the stock item plaintiff was compelled to take that item of pay in stock, that if there was a wrongful conversion of the stock left in escrow with the trust company no lien could be adjudged against the railroad property as an incident to a judgment for such conversion.

So much for the theories of the litigants, *nisi*. But the trial judge also had theories and must be reckoned with on that score, since his judgment presumably was predicated on his own, rather than on litigants' views. Anent his theory on the stock item, the first glimpse we get of it was at the commencement of the trial. It seems that the trust company having been dismissed out of the case, the other defendants asked leave to amend their answers so as to raise the question of defect of parties defendant. Leave to amend was refused, and in doing so, the court said: "I don't see that it (the trust company) is actually a necessary party, either on plaintiff's theory or on defendants' theory of this case. *I don't see how an order could issue against the St. Louis Trust Company to turn over the stock to the plaintiff.*" Later the court put itself in bonds somewhat by instructions, and its theory on the stock item is further somewhat foreshadowed in their terms. Thus, it instructed (itself) that: "There is no evidence in this case showing the market value, as such, of the said capital stock stipulated in the contract to be delivered to said Baumhoff;" and, further, that, "If the plaintiff is entitled to recover the value of said capital stock, he is entitled to recover the highest value which it may have possessed at any time after he was entitled to recover the same and prior to the beginning of this suit, not exceeding the sum of twenty-five thousand dollars;" and further, that: "No judg-

ment establishing a contractor's lien upon a railroad can be rendered unless a breach of contract is shown; even though the court find from the evidence that the St. Louis & Kirkwood Railroad Company converted to its own use any property deposited by it in escrow with the St. Louis Trust Company, no lien can be adjudged against any property of said Railroad Company as an incident to or in connection with a judgment against said Railroad Company for such conversion;'' and another instruction in substance set forth that if the court found that plaintiff was entitled to recover in money, then the measure of damages should be adjusted with due reference to the fact that the consideration to be paid included a certain quantity of stocks, not money, and that plaintiff agreed to perform the contract for the actual value of the stocks at the time plaintiff was entitled to them plus the money payment out of the bonus subscriptions, and that aside from any damage by reason of non-payment of the cash from the bonus subscriptions, "the measure of damages, *if any*," must be the value of any stocks wrongfully withheld from plaintiff at the time of such withholding, estimated in lawful money of the United States.

The lien case was held *sub judice* until October, 1899, at which time the court made its finding and rendered judgment. It found against the counterclaims of both the railroad defendants; found full performance of the construction and equipment contract by plaintiff, and that he was entitled to his pay, etc. When it came to the stock item it found as follows: "That he (plaintiff) was to receive for the work of constructing said road . . . . twenty-five thousand dollars in paid-up shares of the capital stock of the St. Louis & Kirkwood Railroad Company (here follows other elements of the construction contract); . . . *that he is entitled to receive* twenty-five thousand dollars ($25,-000) in paid-up shares of the capital stock of the St.

Louis & Kirkwood Railroad Company; and the further sum of five thousand ($5,000) in cash, with interest on said cash sum from the — day of ——, A. D. 189--. The court further finds that the said shares of the capital stock of the St. Louis & Kirkwood Railroad Company are not shown by the evidence submitted to possess any pecuniary value."

The judgment entered was that plaintiff recover of the defendant railroad company "the said sum of five thousand eight hundred ninety-seven dollars and fifty cents" — which sum is confessedly the cash item due from the bonus subscriptions plus the interest thereon, and none other — and his costs against both of the remaining defendants, that plaintiff have a lien for said sum on the roadbed, etc., and that the same be foreclosed, etc.

From this judgment, the defendant railroad companies appealed to this court and it was in all things affirmed by Division 1 in December, 1902. [171 Mo. 120.] In the opinion by Brace, P. J., the judgment and finding of the St. Louis Circuit Court are set forth *in haec verba*, and it was said: "There is abundant evidence in the record to support the finding of the trial court." It was further said: "The fact that he [plaintiff] may have had a right of action against the trust company therefor [that is, for the properties and money held in escrow by it] was no reason why he should have been forced to have abandoned his lien, and resort to such action. While he was entitled to but one satisfaction, he might have several remedies."

So much for the lien case.

And when it is further stated that presently after being affirmed here, said money judgment was collected on *fi. fa.*, that defendant in its answer herein pleaded the former adjudication as a bar by estoppel, that it substantially appears that plaintiff claimed possession of the stock certificate from the trust company, but it

was not turned over to him because of the continued objection of defendant, and that thereupon the present suit for specific performance was instituted, we have before us all facts necessary to understand the two propositions "a" and "b" relied upon to reverse the decree.

I.  Where the pecuniary value of corporate stock is not provable (as here) and where in consequence one may not have adequate damages at law, he is not remediless against those who withhold such stock to which he is entitled, but a suit for specific performance of a contract to deliver lies.  [Dennison v. Keasby, 200 Mo. 408, and cases cited; 26 Am. and Eng. Ency. Law (2 Ed.), 122.]  It is thus seen that, on the plainest principles of equity, unless plaintiff's right to the stock be otherwise barred, he is entitled to his remedy.

II.  In considering whether plaintiff is estopped by the judgment in the lien case, it is well enough to note that plaintiff relies on that very judgment as determining his right to the stock.  As we grasp it, the theory of plaintiff may be said to be that the present proceeding is in the nature of an equitable execution issued on that judgment — that is, an equitable proceeding to enforce a judgment at law already determining plaintiff's right.  That he sues in affirmance of the judgment.  On the other hand, the defendant contends, in effect, that plaintiff pursued his remedy in that case to its final determination, that he asked judgment for the value of the stock and got precisely what the proof showed him entitled to, to-wit, *nothing*. Therefore, defendant argues, that is the end of it and it may not be vexed twice — nothing he got then, and shall get the same now.

In view of these contrary views of the judgment in the lien case, it will be well enough presently to

point out precisely what was determined in that case, because the general principles controlling *res judicata* are not in doubt — the difficulty lies in the application of those principles to particular cases.    For instance, learned counsel for both parties accept and rely on the doctrine of Southern Pacific R. R. Co. v. United States, 168 U. S. l. c. 48, *et seq.*, in which Justice HARLAN said: ''The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination.    Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them.''

In the course of that opinion Justice HARLAN reviews many cases, among others, Cromwell v. Sac County, 94 U. S. 351; and sums up the doctrine of the Cromwell case by stating it to be this: ''That a judgment upon the merits constitutes an absolute bar to a subsequent suit upon the same cause of action in respect to every matter offered and received in evidence, or which might have been offered to sustain or defeat the claim in controversy, while if the second

action is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered, the injury [inquiry?] in such case being 'as to the point or question actually litigated and determined in the original action, not what might have been litigated and determined. ' "

In Womach v. St. Joseph, 201 Mo. 1. c. 479, the following exposition of the law of *res judicata* was approvingly quoted from the Duchess of Kingston's case (2 Smith's Leading Cases [pt. 2, 8 Ed.], p. 734): "From the variety of cases relative to judgments being given in evidence in civil suits, these two deductions seem to follow as generally true: First, that the judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea, a bar, or as evidence, conclusive between the same parties, upon the same matter, directly in question in another court; secondly, that the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, between the same parties, coming incidentally in question in another court, for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidently cognizable, nor of any matter to be inferred by argument from the judgment."

In Clark v. Blair, 14 Fed. 812, McCRARY, Circuit Judge, had under determination a case in point here, and held, quoting from the syllabi, that "the judgment in a former suit based upon the same facts, or between the same parties or their privies, but to enforce a different demand and obtain another form of

relief, is conclusive only as to what was in fact litigated and decided in such suit."

Attending now to what was determined in the lien case, it will be seen that plaintiff's absolute right to the stock was determined by the judgment. So much stands out boldly and is clear. That judgment was in all things affirmed by this court, and, therefore, under the authorities quoted, all reagitation of that question is concluded as between plaintiff and defendant. What else, if anything, was determined by the lien judgment? When it is seen that the prime object of that suit was to establish and foreclose a lien for any money judgment recovered, that defendant asked and was allowed an instruction that no damage for conversion of the stock could be enforced by way of a lien, that the court found that no pecuniary value was established for the stock and followed that finding by assessing the lien amount at the five thousand dollars and interest due plaintiff out of the bonus subscriptions —— we say all these things appearing, it sufficiently appears that the force and effect of the determination in the lien case was that plaintiff was entitled to two things: first, to the stock in kind; and second, to a money judgment on the item of bonus subscriptions. Having so found, judgment followed for the money, foreclosure of lien and award of execution. It must be remembered that the record before us shows also that the trial court was of the opinion it could not grant relief in kind in the lien case, it being a suit at law, hence could not order the stock turned over to plaintiff. This appears in its ruling refusing leave to amend the answers. These things sufficiently appearing, we are not inclined to hold that the judgment in the lien case, either in terms or intendment, undertook to assess plaintiff's damage on the stock item or its value at *nothing,* and then so merge that impalpable or shadowy value into the concrete money judgment

that he would stand precluded from thereafter claiming the stock itself. Why, indeed, should the trial court have strained a point to preclude plaintiff's subsequent claim of stock solemnly found to be his? To have done so would have been to toy with plaintiff's rights and press to his lips a judicial Tantalus' cup. The court did not do so. The force of its judgment is precisely the other way and should be construed to mean that, as to stock, the judgment contented itself with finding and pointing plaintiff to his title in, and right to possession of, the thing itself — a right that could not be enforced by final process in the lien case but must be pursued elsewhere. Hence, plaintiff, having received satisfaction on the money judgment, is estopped to claim anything more on that score. But in so far as the judgment in the lien case determined his right to the stock, he has never received satisfaction to this day. His right being established, shall he have no remedy because the arm of a law court was too short to give him one? Under what more favorable auspices could equity step in with its corrective power?

It seems to us that any other conclusion would be to dig a pit and spread a net to ensnare the feet of justice; because, aside from money value, the stock had sentimental values, and conferred powers and privileges upon its owner — for example, voting power, the right as a share owner to a voice and finger in the corporate management — all of which are privileges given and protected by law and which can only be exercised by the transfer of the stock to him. Having these property rights, it would seem to be paltering with the situation to deny a remedy, unless we were constrained to take that course by some inflexible principle of law. *Ubi jus, ibi remedium,* as said by counsel.

If this were a suit for the value of the stock or one based on some alleged conversion by defendant prior to the lien case, the doctrine of *res judicata* might be

held to apply because it could with propriety be urged that the court had in judgment the question of value in the lien case. But, being in effect a suit to complete and round out a right established by the former suit, the latter ought to be held good as far as it went.

In Nickerson v. Stage Co., 10 Cal. 520, Terry, C. J., quoted with approval the following passage from Swift's Evidence: "Where the *cause* and *object* of both actions are the same, the judgment in the prior bars the subsequent suit. When the cause or object of the actions are different, though the point in dispute is the same in both, the prior judgment is no bar to the subsequent action, but the verdict is matter of evidence to prove the point."

In Perry v. Dickerson, 85 N. Y. 345, it was held, quoting from the syllabus, that: "To sustain a plea of a former judgment in bar it must appear that the cause of action in both suits is the same, or that some fact essential to the maintenance of the second suit was in issue in the first action and was decided *adversely* to plaintiff. The bare fact that two causes of action spring out of the same contract does not *ipso facto* render a judgment on one bar to a suit on the other."

Litigation being only "a means of administering uniform justice," it has been held that where plaintiff's ultimate right to sue was not determined in the first proceeding, or where the determination proceeded upon some technical objection not affecting it, the first judgment will constitute no bar to the second suit. [Carmony v. Hoover, 5 Pa. St. 305.] It was said by McIver, J., in Sease v. Dobson (S. C.), 13 S. E. 530, that: "It is true that parties may, and sometimes do, fail to obtain that justice which the real facts entitle them to, by the manner in which their cases are presented to the court; but such an unhappy result ought always to be avoided, if it is practicable to do so without infringing settled rules of law which it is essential

to the welfare of the commonwealth to preserve in their fullest integrity, for, being established for the guidance and control of the whole community, they should never be distorted or strained to suit the fancied justice of a particular case."

Conceding the foregoing dictum sound, nevertheless, we find no inflexible principle of law impinged upon in granting relief to plaintiff in this case. In getting at ultimate right it has been held that a suit for specific performance of a contract, dismissed on hearing on the merits, is not a bar to an action at law between the same parties to rescind the contract and recover back money paid under it. [Ballou v. Billings, 136 Mass. 307.] The judge writing that case, OLIVER WENDELL HOLMES, later and now a member of the U. S. Supreme Court, spoke for that court in an opinion in Northern Assurance Co. v. Grand View Building Association, 203 U. S. 106, holding that a suit at law to recover on an insurance policy, in which plaintiff was denied recovery as the policy stood, is not an adjudication that the contract of insurance cannot be reformed in an after suit in equity. The first suit had proceeded on the theory that a recovery could be had without reformation; and in disposing of the question of election, Justice HOLMES, epigrammatically, said: "Its [plaintiff's] choice of law was not an election but an hypothesis." So, too, in Garland v. Smith, 164 Mo. 1. c. 22, it was said: "Where the purpose and object of the former action are the same with the later action, it is not to be questioned that the judgment concludes everything which might have been brought forward, although not in fact pleaded or in evidence, but where the subsequent action is upon a different claim, the former judgment only bars those things which were in issue or included in the issue in the former action or suit, nor will the judgment bar another cause which might have been joined with the former cause of action

but was not, and if different proofs are required to sustain two actions, the judgment in one is no bar to the other." [Citing Cromwell v. Sac County, *supra*.]

Many other cases might be cited, by parity of reasoning sustaining the decree in this case against the attack delivered by defendant in its assignment of error "a," but when it is further said that the cause of action and the objects of the two suits are dissimilar; that, the trust company having been dismissed out of the former suit and included in this, the parties are not the same, enough appears to give the grounds of our conclusion, which is, that the court committed no error in holding that the lien case was not *res judicata*.

III. But it is contended by defendant that, laying the lien case and specific performance case side by side, it is apparent plaintiff has split up an entire cause of action, and, therefore, is estopped to maintain his last suit. It is elementary law that an indivisible, hence, single and entire, cause of action may not be split at the whim of plaintiff into a series of suits, to the harassment of a defendant. The law abhors a multiplicity of suits; it grants its benediction to arbitration, to compromise, to accord and settlement. It concerns the law that there be an end to lawsuits. Plaintiff may have but one action for one entire wrong, and but one action for one entire contractual right; but the rule against the splitting of causes of action does not obtain where there is one contract but the performance is several. Here the performance is several, though the two causes of action arose on the same contract. This is a suit against the trust company to deliver the physical custody of stock over to plaintiff and to compel defendant railroad company to transfer that stock on its books in accordance with its by-laws and issue a new certificate. Performance of the contract in kind was contemplated by its terms. Failure

to deliver the stock and perform in that behalf created a single, entire cause of action for specific performance. It matters not that the contract was violated in the particular that plaintiff was not paid $5,000 out of the bonus subscriptions whereby plaintiff had another entire and indivisible cause of action rightfully culminating in a money judgment and lien. One cause is in equity, the other at law, though both spring from one contract. There is no merit in this contention.

The decree is sustained by the reasoning of Christopher & Simpson, etc., Foundry Co. v. Kelly, 91 Mo. App. 93; Perry v. Dickerson, 85 N. Y. *supra;* Boyce v. Christy, 47 Mo. 70; and other cases cited under point 2 of plaintiff's brief.

IV. Finally: it is said, *arguendo,* in the brief of plaintiff's learned counsel, as follows: "The substantive law of the case is found in the Decalogue, Exodus 20: 15"—to-wit: Thou shalt not steal. Replying to that contention it is argued, *contra,* in the brief of defendant's learned counsel that the foregoing interdiction is not in point here, but that an old case decided by a *pseudo*-judge, one Portia, reported in Merchant of Venice, Act IV, Scene I, is on all-fours (*quatuor pedibus*) — a case known to the profession as the Pound-of-Flesh-and-Drop-of-Blood Case. These ingenious and rather tense contentions pro and con have been looked into for substance and are disallowed; because on the one side there is absent certain venerable elements essential to constitute larceny, known to scholars in jurisprudence as the *asportavit,* the *animus furandi* and the *doli capax.* Did the defendant have the stock in possession? No—*ergo,* there is no *asportavit.* What of the *animus furandi?* Is there any? No. Is a corporation in law *doli capax,* so that it may be guilty of larceny? Doubted, and the question reserved. So, too, the doctrine of Portia's case seems to be afield; for in the opinion handed down as reported

by Mr. Shakespeare it was held that said pound could only pass to the plaintiff on a condition subsequent, *viz.*: his "lands and goods are by the laws of Venice confiscated to the State of Venice" if (much virtue in that "if") in the cutting thereof by plaintiff "one drop of Christian blood" was shed. Accordingly, observe that plaintiff in that case entered a *remittitur* for the pound, in fact suffered a nonsuit, rather than face the loss of all his assets, real, personal and mixed; while here defendant concedes plaintiff the pound itself, and says he has it. Is Portia's law, law? We may answer that question in the phrase of the same learned reporter in another case (see Hamlet's case) — to-wit: "Ay, marry, is't; crowner's quest law." Thus it falls out that the last questions raised may be put aside as mere *flotsam* and *jetsam*.

The decree was right and should be affirmed. Let it be so ordered.

All concur.