## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

# J. B. KENNERLY, ET AL. V. THE COLUMBIA CHEMICAL CORPORATION.

### September 20, 1923.

1. SPECIFIC PERFORMANCE—*Sale of Personal Property—Transfer of Shares of Stock.*—As a general rule a court of equity will not decree a specific performance of a contract for the sale of personal property and this includes stock in a corporation. But, specific performance may be had of a contract to deliver stock, the pecuniary value of which is uncertain and not easily ascertainable, or where the stock has no market value, the remedy at law in such cases being deemed to be inadequate. Where there is uncertainty of the real value of the stock and uncertainty in the matter of ascertaining the amount of damages, equity will give relief.

2. CORPORATIONS—*Ultra Vires—Corporation Purchasing its own Stock.*—In some jurisdictions it is held that a corporation cannot purchase its own stock for the reason that such a transaction is held to be *ultra vires.* But in Virginia a corporation, in the absence of charter or statutory provisions, may purchase its own stock, provided it acts in good faith.

3. CORPORATIONS—*Ultra Vires—Burden of Proving Ultra Vires.*—The act of a corporation is *prima facie intra vires,* and the burden of proving that it is *ultra vires* rests upon the party claiming that the company violated its charter.

4. CORPORATIONS—*Ultra Vires—Contract to Repurchase Stock upon Sale to Purchaser.*—A contract of a corporation to repurchase its stock upon sale to a purchaser is valid.

5. CORPORATIONS—*Contracts—Assent of Corporation—Record.*—It is necessary to show in some form the assent of the corporation to a contract, but in the absence of statutory requirement such assent need not be shown by a formal vote, nor by entry in the minutes of a directors' meeting; nor is it necessary that a contract shall be made a matter of record, unless a statute or its charter so provides.

6. CORPORATIONS—*Board of Directors—Formal Resolution—Parol Evidence of Action of Directors.*—As a general rule a vote or other action on the part of the board of directors need not be by a formal resolution entered on the minutes or records of the corporation, unless it is

expressly required, and when it is not a matter of record it may be proved by parol.

7. CORPORATIONS—*Contracts—Acceptance of Benefit of Contract—Waiver of Informalities.*—A corporation which has received the consideration of a contract cannot defend against an action on the contract on the ground that the provisions of the statute, charter or by-laws prescribing the form of the contract, or the mode of executing it, were not complied with by the officer acting for the corporation in the execution of the contract. In other words, any informality in executing a contract is waived and cannot be set up as a defense where the corporation has accepted and retained the benefits of the contract.

8. CORPORATIONS—*Execution of Contracts—Contract to Purchase Stock—Case at Bar.*—In the instant case an agreement by a corporation to repurchase its stock from a purchaser at a certain date was executed by the corporation in its corporate name by its president and attested by its secretary. The execution and delivery of this paper was a condition precedent to the delivery by the purchaser of the stock of a deed which was the consideration for the purchase. The by-laws of the corporation provided that five members of the board of directors should constitute a quorum for the transaction of business. The business of the corporation was conducted principally by five directors, two of whom were officers, who frequently transacted business for the company without entering any resolution or minute on the directors' record book. Later, a resolution was adopted by the stockholders ratifying all acts done by the board of directors.

*Held:* That the agreement was a legal and binding contract of the corporation.

Appeal from a decree of the Court of Law and Chancery of the city of Roanoke. Decree for defendant. Complainants appeal.

*Reversed and final decree.*

The opinion states the case.

*J. H. Stuart* and *Hoge & Darnall*, for the appellants.

*Jackson & Henson*, for the appellees.

WEST, J., delivered the opinion of the court.

J. B. Kennerly and Florence Kennerly, his wife, instituted this suit against the Columbia Chemical Corporation for the specific performance of its contract to purchase from them 1,000 shares of the capital stock of said corporation. The case was heard on complainants' bill, the defendant's demurrer and answer thereto, and the depositions of witnesses and exhibits filed.

The court overruled the demurrer and decreed that the plaintiffs were not entitled to either the special or general relief prayed for, and dismissed their bill. The case is before us on an appeal from that decree.

The complainants owned a valuable farm near Roanoke, Virginia, containing 177.84 acres, worth at least $15,000. Columbia Chemical Corporation was chartered under the laws of the State of Virginia in March, 1917, with a maximum capital stock of $500,000 and a minimum of $150,000. Its principal office was located at Roanoke, Virginia, and the officers and directors named in the charter, who, unless sooner changed by the stockholders, were to manage the affairs of the corporation for the first year, were H. B. Goodloe, president and director, S. L. Fellers, vice-president and director, and S. W. Hairston, secretary and treasurer and director. Among the purposes for which the corporation was formed was the manufacture of beverages, extracts and syrups of all kinds. Subsequently the officers were changed and the acting board of directors consisted of five members, to-wit: S. L. Fellers, A. L. Hughson, S. H. Hairston, W. C. Burns and A. D. W. Walton. There were other parties who were named as members of the board of directors but were not notified of their appointment and never participated in any of the meetings of the board.

When organized the corporation had no tangible assets except a formula which it expected to use in the

manufacture of syrups and soft drinks similar to Coco-Cola.

W. O. Trenor, acting for himself and also as agent for the Columbia Chemical Corporation, solicited the complainants to purchase stock in the corporation. Complainants informed him that they had no means with which to purchase stock except the farm of 177.84 acres and that in no event would they take over $5,000 worth of stock. It was finally agreed between Trenor, complainants and the corporation that $15,000 worth of stock be issued to complainants by the corporation, $5,000 of which was to be purchased in fee by complainants. The remaining $10,000 worth was to be held by the complainants for twelve months; and at the expiration of that time this $10,000 worth of stock was, upon thirty days notice, to be taken back by the corporation at the price of $10,000 cash, with six per cent. interest. This agreement between complainant and the corporation was reduced to writing on September 12, 1917, and in accordance with the agreement of the parties complainants deeded the 177.84 acres of land, and certain growing crops, machinery, etc., to W. O. Trenor and H. M. Trenor, his wife, for the $15,000 worth of stock. The conveyance was made to them to expedite the sale and transfer of the property. Trenor and wife soon sold the farm for $15,000 cash, most of which was turned over to the corporation, as a loan or otherwise, and used by it in exploiting its enterprise and promoting the sale of its stock.

The complainants complied with the terms of the agreement on their part, and gave the required notice demanding that the corporation comply on its part by redeeming the $10,000 worth of stock at the end of twelve months. Upon the request of the corporation, a further extension of twelve months time in which to

redeem the $10,000 worth of stock was granted the corporation. At the expiration of the final extension period complainants demanded that the corporation comply with the terms of its agreement, which it refused to do, assigning no reason for noncompliance except lack of money.

Thereupon this suit was instituted for a specific performance of the contract.

The bill alleges, among other things, that a court of equity alone can give full and complete relief by reviewing all the facts and circumstances connected with the transaction and requiring a performance of the contract; that the $10,000 worth of stock as represented by numbers of shares has no fixed commercial or market value, the price for the same fluctuating and depending largely upon the efforts of the stock salesman, which would render the recovery of damages at law an inadequate remedy; that complainants were *bona fide* stockholders to the extent of $5,000 as well as a creditor and had a right to have the assets applied to the payment of debts of the corporation; that the president and secretary were guilty of fraud in misusing and misapplying the assets of the company and fraudulently issuing stock to themselves purporting that they had paid full value therefor, when in fact they had paid nothing. The bill then prays that the corporation be compelled to specifically perform its said contract and agreement and be required to pay complainants for the 1,000 shares of its capital stock at the redemption value of $10,000, with interest from September 12, 1917; and that a receiver be appointed to take charge of the assets of the company, if any, and render a full and complete account of the assets and liabilities of the corporation to the court, and for general relief.

The complainants contend that the court erred in not

entering a decree requiring the corporation to specifically perform its contract of September 12, 1917, by paying to them $10,000 with interest, and transferring the 1,000 shares of stock from the complainants to the corporation.

The defendant maintains that the decree complained of is right, because (1) complainants' remedy, if any, is at law and not in equity, (2) the contract is *ultra vires*, and (3) if not *ultra vires* it is not the contract of the corporation.

[1] As a general rule a court of equity will not decree a specific performance of a contract for the sale of personal property and this includes stock in a corporation. But, specific performance may be had of a contract to deliver stock, the pecuniary value of which is uncertain and not easily ascertainable, or where the stock has no market value, the remedy at law in such cases being deemed to be inadequate. 25 R. C. L., p. 298, sec. 110; *First Nat'l Bank* v. *Corporation Securities Co.*, 128 Minn. 341, 150 N. W. 1884; *Baumhoff* v. *St. Louis, etc., R. R. Co.*, 205 Mo. 248, 104 S. W. 5, 120 Am. St. Rep. 745; *Gilfallan* v. *Gilfallan*, 168 Cal. 23, 141 Pac. 623, Ann. Cas. 1915D, 784; *Hogg* v. *McGuffin*, 67 W. Va. 456, 68 S. E. 41, 31 L. R. A. (N. S.) 491.

In *Hogg* v. *McGuffin, et als*, 67 W. Va. 456, 68 S. E. 41, 31 L. R. A. (N. S.) 491, the court held: "Equity will decree specific performance of a contract for exchange of shares of bank stock in a corporation when legal remedy is not adequate because the stock sought is of special or peculiar value, or is not readily purchasable in the market, or has no certain ascertainable value, or a money judgment against the party would be worthless because of insolvency, or other circumstances calling for specific performance as the only adequate relief."

Where there is uncertainty of the real value of the

stock and uncertainty in the matter of ascertaining the amount of damages, equity will give relief. *St. Regis Paper Co.* v. *Santa Clara Lumber Co.*, 173 N. Y. 149, 65 N. E. 967.

[2] In some jurisdictions it is held that a corporation cannot purchase its own stock for the reason that such a transaction is held to be *ultra vires.* But in Virginia and by the weight of authority a corporation, in the absence of charter or statutory provisions, may purchase its own stock, provided it acts in good faith. *U. S. Min. Co.* v. *Driscoll*, 106 Va. 663; 56 S. E. 561, 117 Am. St. Rep. 1028; *Rivanna Nav. Co.* v. *Dawsons*, 3 Gratt. (44 Va.) 19, 46 Am. Dec. 183; *Shoemaker* v. *Washburn Co.*, 97 Wis. 585, 73 N. W. 333; *Rollins* v. *Shaver Wagon Co.*, 80 Ia. 380, 45 N. W. 1037, 20 Am. St. Rep. 427.

[3] The act of a corporation is *prima facie intra vires*, and the burden of proving that it is *ultra vires* rests upon the party claiming that the company violated its charter. Morawetz, Private Corp., sec. 152.

[4] This court in *Duncan* v. *Carson*, 127 Va. 306, 103 S. E. 665, 105 S. E. 62, recognized the validity of a contract of a corporation to repurchase its stock upon sale to a purchaser. To the same effect is *Armstrong* v. *Oler*, 220 Mass. 112, 107 N. E. 393; *McIntyre* v. *E. Bement's Sons*, 146 Mich. 74, 109 N. W. 45, 10 Ann. Cas. 143; *Johnston* v. *Trask*, 116 N. Y. 136, 22 N. E. 377, 5 L. R. A. 630, 15 Am. St. Rep. 394; 7 R. C. L. (Corporations) 210.

The contract and agreement of September 12, 1917, was executed by the corporation in its corporate name by its president and attested by its secretary. The execution and delivery of this paper was a condition precedent to the delivery by complainants of the deed for the farm to Trenor and wife.

The by-laws of the corporation provided that five

members of the board of directors should constitute a quorum for the transaction of business. The business of the corporation was conducted principally by five directors, two of whom were officers. They frequently transacted business for the company without entering any resolution or minute on the directors' record book, and the record book fails to show any action on the part of the board with reference to the contract of September 12, 1917.

The corporation was greatly in need of money in September, 1917, and entered into the agreement in question with the understanding that the greater portion of the money derived from the sale of the personalty and the farm should be paid over to the corporation as a loan or otherwise and this was done. Later, a resolution was adopted by the stockholders ratifying all acts done by the board of directors.

It was held by this court in *Altavista Cotton Mills* v. *Lane*, 133 Va. 1, 112 S. E. 637, as follows:

[5] "It is necessary to show in some form the assent of the corporation to a contract, but in the absence of statutory requirement such assent need not be shown by a formal vote, nor by entry in the minutes of a directors' meeting; nor is it necessary that a contract shall be made a matter of record, unless a statute or its charter so provides.

[6] "As a general rule a vote or other action on the part of the board of directors need not be a formal resolution entered on the minutes or records of the corporation, unless it is expressly required, and when it is not a matter of record it may be proved by parol.

[7] "A corporation which has received the consideration of a contract cannot defend against an action on the contract on the ground that the provisions of the statute, charter or by-laws prescribing the form of the

contract, or the mode of executing it, were not complied with by the officer acting for the corporation in the execution of the contract. In other words, any informality in executing a contract is waived and cannot be set up as a defense where the corporation has accepted and retained the benefits of the contract."

[8] When tested by the foregoing legal standard, it is apparent that the contract of September 12, 1917, is the legal and binding contract of Columbia Chemical Corporation.

For the foregoing reasons, we are of the opinion that the decree complained of is erroneous and should be reversed, and the court will enter here such decree as the trial court should have entered, requiring the defendant to specifically perform its contract of September 12, 1917, as prayed for in the complainants' bill.

*Reversed and final decree.*