Parker, J.
If this were a case of the first impression, and we had now, in the absence of authority, to decide upon the true meaning of the statute of frauds in relation to contracts for the sale of lands, I should be much inclined to say, that a specific execution of this contract ought not to be decreed. But our legislature has copied the provisions of the english statute of 29 Charles 2. ch. 3. almost verbatim, and our courts *390 have generally adopted the construction given of that statute in Westminster Hall. ' This is perhaps the safest course, particularly when we recollect that at the several revisáis the statute of frauds has been reenacted, with a full knowledge of the interpretation given to its words, in the courts of that country from which we borrowed them.
It has been there repeatedly settled, that an agent authorized by parol to sign a contract for lands, is thereunto lawfully authorized, within the provisions of the statute. The authority to sell implies an authority to do every thing necessary to complete the sale, and make it binding on the principal. It is on this principle that an auctioneer empowered to sell, has always been held to be the agent of the vendor empowered to sign. In no one of the cases has it ever been required, that an express authority to sign should be superadded to the authority to sell, although the authority to sign is certainly required by the statute. It has, in all of them, been taken for granted that an agent authorized to sell lands, is empowered to do every act necessary to complete the contract. As the statute declares that no agreement for the sale of lands shall be binding, unless it is in writing, and signed by the party to be charged therewith, or some other person thereunto (that is, to the signing) lawfully authorized, it could not be presumed that he who authorizes another to sell his lands, meant to deprive him of the power to render that sale effectual and binding on the purchaser. If the agent sells, and does not sign a note or memorandum in writing, the vendor has the same locus poenitentice as if he himself verbally agrees to sell; for he may revoke the authority of the agent at any time before the agreement is executed according to the statute. So an agent to purchase must have authority to bind the purchaser by signing the agreement, although his authority may be revoked before the contract is reduced to writing and signed.
*391 These propositions I take to be clearly established t. n t by all the cases.
The signing required by the statute must be such as to have the effect of giving authenticity to the instrument, and be so intended; but it does not seem to be necessary that the principal’s name should any where appear. The statute is complied with, if the contract for the sale of the principal’s land be in writing, and signed by his agent, with a view' of authentication, and having the effect. No other construction can possibly be placed on the cases of Kemeys v. Proctor, 3 Ves. & Beam. 57. Coles v. Trecothick, 9 Ves. 234. and White v. Proctor, 4 Taunt. 209. In the case at bar, the authority to sell is clearly proved; the intention by John to sell the land of Charles Green is expressed in terms; and the agent signs his name at the foot of the instrument, and with a view to authentication.
Further, after the contract was signed, Charles Green was told by Chapman S. Green that his agent had sold the land to Grigsby, and Charles said he was satisfied, and glad he had sold it. Here was a ratification of John Green's act, before he conveyed to Yerby, and this wmuld bind him, under the authority of the case of Maclean v. Dunn, 4 Bingh. 722.
Of this sale to Grigsby, it is proved that Yerby had express notice before he purchased or contracted to purchase from Charles Green.
Under these circumstances, I fee 1 bound by the weight of authority to affirm the decree executing the contract of the 30th of August 1S30, between John Green the agent of Charles and N. Grigsby, with the variation suggested by the president.
As to a decree between the defendants, that Charles Green refund the purchase money said to have been received by him from Yerby, it is sufficient to say, that no such matter was put in issue by the pleadings in the case, and there is no satisfactory evidence of the fact of such payment to be found in the record. The re *392 ceipt copied at the foot of the deed is not authenticated, r . r . . . . and is suspicious on its face, for it is dated the 17th of September 1830, and promises that Charles Green should make a deed to Yerby when called on, although the deed had already been made (if we may judge by its date) on the 8th of September preceding. This may be accounted for; but the paper is not proved, and there is no other evidence of the payment to C. Green by Yerby than what is to be found in the deposition of Joseph Varner, in an answer to a question having no reference to such payment. He is asked, at what time Charles Green said he intended to sell his land to Yerby ? and he answers, “ It was a few minutes before I saw mr. Yerby pay the money to Charles Green. I supposed it to be for the land.” It is evident that this loose answer to an incidental question would not justify a decree for a specific sum, if it were otherwise proper in a case like this.
Upon the whole, I concur in the decree to be indicated by the president.
The other judges concurred in the opinion of Parker, J.
The decree of the court of appeals was as follows :
“ The court is of opinion that there is no error in the decree, except so far as it requires a release from the appellant to Charles Green, instead of decreeing a re-conveyance by the appellant to the said Charles Green, with warranty only against himself and all claiming under him : therefore it is decreed and ordered that the said decree, so far as the same is above declared to be erroneous, be reversed and annulled, and that the residue thereof be affirmed; and also that the appellant do pay unto the appellee, as the party substantially prevailing, his costs by him about his defence in this behalf expended. And it is ordered that the cause be remanded to the circuit superiour court, to be further proceeded in according to the foregoing opinion and decree.”