Syllabus.

### Richmond.

## DARLING V. CUMMING'S EX'OR AND OTHERS.

### JANUARY 30, 1896.

92 521
94 783

92 521
95 41

92 521
96 79
96 89
96 314
96 315
96 463

92 521
98 486
98 497

92 521
99 14

92 521
108 186
j108 322

1. CONTRACTS FOR SALE OF LANDS—*Reference in Signed Paper to One Not Signed—Parol Evidence.*—In order to satisfy the requirement of the statute of frauds, where the whole contract of parties is embodied in different papers, or written on different pieces of paper, some of which are signed and others not, the signed paper must refer to the unsigned in clear and distinct terms, but the reference need not be to the unsigned *eo nomine.* Parol evidence is admissible to identify it if the reference to it is sufficiently clear to exclude the idea that any other paper can be referred to.

2. CONTRACTS FOR SALE OF LANDS—*Reference in a Will to an Unsigned Paper—Parol Evidence.*—If a will can in any case be read in connection with a previous unsigned paper to take a case out of the statute of frauds, it is not warranted in the case at bar, because the unsigned paper is not clearly referred to in the will, and if parol evidence be admissible to connect the two, when admitted, it is by no means certain that the *unsigned paper* was in the testator's mind when he referred, in his will, to the " understanding" between himself and the appellant.

3. SPECIFIC PERFORMANCE—*Terms of Contract—Change of Circumstances—Unexcused Delay.*—Applications for specific performance of contracts are addressed to the sound discretion of the court, regulated by established principles. The contract must be distinctly proven, and its terms clearly ascertained. It must be reasonable, certain, legal, mutual, based on a valuable consideration, and the party seeking its enforcement must have been ready, prompt, eager, and desirous to perform. If there has been a change of circumstances or relations, which renders the execution of the contract a hardship to the defendant, and especially if there has been a great change in values, and it is accompanied by an unexcused delay on the part of the complainant, the change and delay together will constitute a sufficient ground for denying specific performance when sought by the one in default.

Appeal from a decree of the Circuit Court of Elizabeth City county, pronounced September 16, 1892, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*James E. Heath* and *G. S. Kendall,* for the appellant.

*Thomas Tabb* and *W. J. Nelms,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This suit is brought by James S. Darling for the specific performance of a contract, alleged to have been entered into between himself and Daniel Cumming in his lifetime.

It appears from the record that on the 10th day of May, 1888, Darling and Cumming went together to the office of a lawyer, who reduced to writing a contract between them, complete in all its parts, for the sale by Cumming, and the purchase by Darling, of a tract of land known as " Milford," in Warwick county, and also embodying a conditional sale of a tract of twenty-five acres adjoining " Milford." But notwithstanding this paper was then and there prepared in the presence of both the parties, it was never signed by either of them, and the whole matter seems to have remained in abeyance from that time until the death of Cumming, which occurred in March, 1889. It further appears that Daniel Cumming left a will, in which the following provision is found :

" I want my estate in Warwick, know as ' Milford,' sold to Mr. Darling, according to an understanding between us. Another tract of forty-seven acres, adjoining ' Milford,' I wish that also to be sold in the same way."

It is claimed that the unsigned paper was expressly referred

to by Daniel Cumming in his will, and that the will and said unsigned paper may be read together, and thus form a contract which can be enforced under the statute of frauds.

It is well settled that where the memorandum of the bargain between the parties is contained in separate pieces of paper, and these papers contain the whole bargain, they form together such a memorandum as will satisfy the statute, provided the contents of the signed paper make such reference to the other written paper, or papers, as to enable the court to construe the whole of them together as constituting all the terms of the bargain. But if it be necessary to produce parol evidence in order to connect a signed paper with others unsigned, by reason of the absence of any internal evidence in the contents of the signed paper to show a reference to or connection with the unsigned papers, then the several papers taken together do not constitute a memorandum in writing of the bargain so as to satisfy the statute. Benj. on Sales (6th Am. ed.), sec. 220. It is not necessary that the signed paper should refer to the unsigned paper as such. It is sufficient to show that a particular unsigned paper, and nothing else, can be referred to, and parol evidence is admissible for that purpose. Benj. on Sales, sec. 221.

In the case at bar the unsigned paper which is now sought to be read with the will of Daniel Cumming, in order to make a contract within the statute of frauds, the specific performance of which will be enforced by a court of equity, bears date May 10, 1888. On the 13th of March, 1889, Daniel Cumming made his will, and died on the 23d day of the same month.

The question has been elaborately argued, as to the admissibility of parol evidence to identify the unsigned contract of May 10, 1888, as the "understanding" between the testator and the appellant, which is referred to by the former in his will. Upon this point the authorities are very diverse, and

all are radically different from the case at bar in this, that in the cases examined both parties to the transaction were living, while in this case one is dead. Our attention has been called to no case where it was attempted to make such a contract in writing as is required by the statute of frauds, by reading in connection with a man's will an unsigned paper prepared before his death. A will is in no sense a contract. It is the voluntary individual act of its author, and revocable at his pleasure. The weight of authority is that the signed paper, which in this case is the will, must refer to the unsigned paper in clear and distinct terms, but that it is not necessary to refer to it *eo nomine ;* that parol evidence is admissible to identify it if the reference to it is sufficiently clear to exclude the idea that any other paper can be referred to. It may well be doubted whether the reference in the will to the "understanding" between the testator and the appellant is a sufficiently clear reference to this unsigned paper to justify the admission of parol proof of its identity, there being no internal evidence in the signed paper to connect it with the unsigned paper. In *Beckwith* v. *Talbot*, 95 U. S. 289, a case unlike this in the facts, Justice Bradley says : "*It is undoubtedly a general rule that collateral papers, adduced to supply the defect of signature of a written agreement under the statute of frauds, should on their face sufficiently demonstrate their reference to such agreement without the aid of parol proof* " ; and, after saying that the rule was not absolute, and that cases might arise which would require a departure from it, he says, "*If there is ground for any doubt in the matter, the general rule should be enforced.*"

In the view taken of this case, however, it is unnecessary to decide whether the parol proof was admissible or not, for, with the aid of that evidence, it by no means appears, with any degree of satisfaction or certainty, that the unsigned contract of May 10, 1888, was in the testator's mind when he

referred, in his will, to the "understanding" between himself and appellant. The circumstances indicate that the contract embodied in that paper had been abandoned. Certainly no sufficient reason appears why it was not signed by the parties in all the time intervening between its preparation and the death of Daniel Cumming, if they intended to conclude it as the final evidence of their agreement. There is nothing to show that the testator ever saw or heard of this paper after it was prepared. It is certain that appellant and himself parted with the understanding that they would not sign it then, and, so far as the record shows, it was never brought to light until appellant, to whom it had been delivered by his counsel, instituted this suit. The testator's will was written by his attending physician, during his last illness, and only a few days before his death. If in health the testator knew nothing of the disposition that had been made of this unsigned paper, it is not likely that he was referring to it in his will when he spoke of the "understanding" between himself and appellant.

From the record in this case, it is impossible to say with any degree of certainty what was the "*understanding*" referred to by the testator in his will. Any conclusion on the subject would be mere conjecture and speculation. The plea of the statute of frauds would be of little avail, if the evidence in this case could be held sufficient to establish the unsigned paper here produced as embodying the "understanding" referred to in the will, and as a contract so clearly proven that its specific performance would be enforced by a court of equity.

Every application for the specific performance of a contract is addressed to the sound judicial discretion of the court, regulated by established principles. The contract must be distinctly proven, and its terms clearly ascertained. It must be reasonable, certain, legal, mutual, based upon a valuable

consideration, and the party seeking performance must not have been backward in enforcing his rights, but ready, desirous, prompt, and eager. *Dunsmore* v. *Lyle*, 87 Va. 391, 393 ; *Powell* v. *Berry*, 91 Va. 568.

The unsigned contract here sought to be enforced is claimed to have been made on the 10th of May, 1888. It provides for the sale of the land in question at $27.50 per acre, its value at that time. It does not appear that this paper was ever mentioned to Daniel Cumming again before his death, in March, 1889. Nor does it appear that appellant ever demanded of the executor of Daniel Cumming the performance of the alleged contract until the institution of this suit in March, 1891, two years after the death of Cumming. In the meantime the land, which is located in the vicinity of the city of Newport News, had advanced in value from $27.50 to $150 per acre. This delay in asserting such rights as he had, under the circumstances of this case, is fatal to the pretension of appellant. If not before, certainly after the death of Cumming, appellant should have promptly gone to the executor, informed him of the existence of the contract under which he claimed the land, and urged its prompt execution by a conveyance. Instead of showing solicitude and eagerness, which would have been natural, and especially proper, with his claim in the doubtful and uncertain condition this was, the evidence discloses indifference. The appellant says that some time after the death of Daniel Cumming the executor called his attention to the reference in his testator's will, and that he told the executor he was going to Europe, and would fix the matter up when he returned. The evidence establishes no effort on appellant's part to have this contract enforced prior to the institution of this suit, when the property had largely increased in value, and it had become greatly to his interest to become the owner of it.

When a vendee delays in completing the contract, in order

Opinion.

that he may speculate upon the chances of its proving to be an advantageous bargain, or that, through a rise in value, or other change of circumstances, his gain may be assured, and then, when he is thus certain that it will be a fortunate speculation, offers to perform, and sues to compel a conveyance by the vendor, a court of equity will refuse to grant him the remedy, even though he may have at an earlier day paid part of the purchase price. And a rise in the value of the land during the interval will always be a fact of much weight tending to show that the vendee's delay was speculative, and for the very purpose of awaiting such a turn favorable to himself. The rule may be laid down as general, applying to either the vendor or the vendee, that where there has been a change of circumstances or relations which renders the execution of the contract a hardship to the defendant, and this change grows out of or is accompanied by an unexcused delay on the part of the plaintiff, the change and delay together will constitute a sufficient ground for denying a specific performance, when sought by the one thus in default. Pomeroy on Specific Performance of Contracts, sections 407 and 408.

It is unnecessary to consider other interesting questions raised by the learned counsel for appellees touching the right of appellant to have specific performance of this alleged contract.

There is no error in the decree complained of, and it is affirmed.

*Affirmed.*