# Richmond

EFFIE M. BROWDER AND F. M. NEWSOM, JR. v. J. C. MIT-
CHELL, ELLEN M. POWELL AND HENRY T. MITCHELL.

June 14, 1948.

Record No. 3329.

Present, All the Justices.

The opinion states the case.

*L. J. Hammack,* for the appellants.

*L. C. Harrell, Jr.,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In November, 1946, J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell, the appellees, filed their bill in the court below against Mary F. Mitchell Shearin, alleging that the three plaintiffs and the defendant, their mother, were the joint owners of a tract of 230.9 acres of land in Brunswick county, Virginia; that the defendant was *non compos mentis;* that the plaintiffs desired a partition of the land, but that it was not susceptible of partition in kind; that they had received from Effie M. Browder and F. M. Newsom, Jr., an offer of $5,050 for the land; that they considered the offer "fair and reasonable" and representative of the "fair market value of said property," and that it "should be accepted."

The prayer was that partition of the land "be decreed in some mode prescribed by law, preferably by a sale of the 230.9-acre tract to Effie M. Browder and F. M. Newsom, Jr., at their offer of $5,050," and that the proceeds of such sale be divided "among the parties entitled thereto according to law."

The names of the individual plaintiffs were signed to the bill by their counsel.

A duly appointed guardian *ad litem* filed the usual answer on behalf of the incompetent defendant. In response to

the directions in a decree of reference, a commissioner in chancery reported, among other things, that the property was not susceptible of partition in kind; that no party in interest was willing to take the whole property and pay to the other parties a reasonable sum or sums for their respective interests therein; that a sale thereof was necessary and would promote the best interests of all the parties concerned; that Effie M. Browder and F. M. Newsom, Jr., had made an offer of $5,050 cash for the property, which was "fair and reasonable" and should be accepted; and that a private sale to these parties at this price should be consummated.

The depositions of the various witnesses supporting these findings were filed with the report.

Before the report of the commissioner in chancery was acted upon by the trial court, counsel for the plaintiffs received from Halifax Paper Company, Inc., a written offer to purchase the property at $5,500 cash. The offeror stated that should its offer be not accepted, it would, in the event of a sale of the property at public auction, start the bidding at $5,500.

Upon being advised of this offer the lower court declined to confirm the report of the commissioner in chancery, recommending that the property be sold privately to Effie M. Browder and F. M. Newsom, Jr., for $5,050, and decreed that the land be sold at public auction. At a public sale the property was bid in by J. C. Lucy for $6,500 cash, and the sale to him at this figure was later confirmed and a special commissioner's deed was executed and delivered.

Thereupon Effie M. Browder and F. M. Newsom, Jr., filed their petition in the cause, alleging that prior to the institution of the suit they had negotiated with J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell, who "were under the impression" that they owned the property in fee simple; that as the result of these negotiations the Mitchells and Mrs. Powell, and their respective spouses, had entered into "a contract" by which they had "agreed to convey" the property to the petitioners for $5,050 cash;

that shortly before this sale was to have been consummated it was discovered that Mary F. Mitchell Shearin, an incompetent person, had an interest in the property; that the Mitchells and Mrs. Powell then, through their "duly con' stituted attorney and agent, filed their bill of complaint in this cause setting forth the agreement, as aforesaid, and asking this honorable court to confirm the sale so made by them" to the petitioners, "this procedure being necessary in order to give to the said purchasers a good title to said property, in so far as the interest of their mother, Mary F. Mitchell Shearin, was concerned;" that during the proceeding J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell had "testified under oath, signifying, ratifying and confirming their agreement with" the petitioners; that subsequently J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell had "repudiated their agreement" with the petitioners, and had refused to convey to the latter their respective interests in the property, notwithstanding the fact that the petitioners offered and were ready and willing to pay to them "their pro rata share of the purchase price of $5,050, as agreed upon, for said property."

The prayer of the petition was, in substance, that the special commissioner, who had in hand the proceeds derived from the sale of the property, be directed to pay to the petitioners the pro rata shares of J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell in the net surplus arising from the sale of the property, over and above the original price of $5,050 at which, it was said, the Mitchells and Mrs. Powell had agreed to sell the property to the petitioners.

To this petition J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell filed a plea asserting the defense that under the statute of frauds (Code, section 5561) the contract relied upon by the petitioners was not enforceable. The trial court sustained this view, dismissed the petition, and hence this appeal.

While the petition filed in the lower court does not in terms so allege, it is clear from its context that its purpose was to enforce specifically an alleged oral contract for the

sale and purchase of the interests of the Mitchells and Mrs. Powell in the real estate involved in the partition suit.

The contention of the petitioners, made both in the court below and before us, is that the allegations in the original bill of complaint are a sufficient memorandum in writing to satisfy the statute of frauds with respect to the oral contract sought to be enforced.

It is, of course, well settled that the whole contract need not be embodied in the memorandum relied upon. *Reynolds* v. *Dixon, ante,* p. 101, 106, 46 S. E. (2d) 6, 8. But there must be an underlying complete oral agreement for the sale and purchase of the land.

As is said in Williston on Contracts, Rev. Ed., Vol. 2, section 567, pp. 1618-19, "The memorandum need not itself constitute a contract, and apart from its effect as a memorandum, it need have no legal operation. There must be a valid oral contract, however, of which the memorandum is an accurate statement, though not necessarily made with that intent."

In other words, "It is the oral contract which is enforced, but it can be enforced only when the statute has been satisfied." Williston on Contracts, Rev. Ed., Vol. 2, section 590, p. 1701.

In *Donald Friedman & Co.* v. *Newman,* 255 N. Y. 340, 174 N. E. 703, 704, 73 A. L. R. 95, 97, the principle is thus stated: "* * * Except as evidence of the oral contract, the memorandum has no force or effect, unless and until the oral contract has been established by a preponderance of evidence. Then, if accurate and complete, it prevents the interposition of the statute of frauds as a bar to the enforcement of the oral contract."

The memorandum may be in the form of a pleading. Williston on Contracts, Rev. Ed., Vol. 2, section 568, pp. 1620-1; 37 C. J. S., Frauds, Statute of, section 176, p. 656; 49 Am. Jur., Statute of Frauds, section 327, p. 638 *ff.*

Tested by these principles it is clear that the petitioners below (the appellants here) were not entitled to specific performance of the alleged agreement. Indeed, there is no evidence that the parties entered into a complete oral agreement for the sale and purchase of the interests of the Mitchells and Mrs. Powell in the land. No evidence was taken directly in support of the allegations of the petition. Petitioners rely for supporting proof on the pleadings filed and the depositions of the various witnesses taken before the commissioner in chancery in the partition suit. These fail to support the allegations of the petition that there was a meeting of the minds of the parties and that a contract was entered into.

The bill is in the usual form employed in a partition suit. There is no allegation that the plaintiffs, J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell, had entered into any agreement to sell the property, or their interest therein, to the petitioners. As has been said, the allegation is that the plaintiffs had "received an offer from" these parties to buy the property at $5,050, that this offer was "fair and reasonable," that it represented "the fair market value of said property and should be accepted."

In other words, the allegations in the bill of complaint merely show negotiations between the parties for the sale and purchase of the property, and the receipt of an offer which the plaintiffs recommended to the court for acceptance. But the acceptance was a matter to be determined by the court in the light of what appeared to be for the best interest of the incompetent defendant.

Nor do the depositions of any of the parties, taken before the commissioner in chancery, sustain the allegations of the petitioners that such a contract was entered into. The plaintiffs, J. C. Mitchell, Ellen M. Powell and Henry T. Mitchell, testified merely that they had received an offer from the petitioners to purchase the property at the stated price of $5,050, that they considered this to be the fair value of the property, and that they desired that the offer be accepted and the sale consummated.

A. E. Browder, the husband of Effie M. Browder, one of the petitioners, testified to the "offer" and to the fairness and reasonableness thereof.

F. M. Newsom, Jr., one of the petitioners, said that the "offer" which he and his companion had made to the plaintiffs had been "accepted *subject to the approval of the court,* since their mother, who inherited the share of a dead son, is in the Eastern State Hospital at Williamsburg." (Emphasis added.)

Thus we see that the evidence relied on shows merely that negotiations had been carried on between the parties for the sale and purchase of the property, and that the appellants had made an offer to buy the same at a fair and reasonable price. It falls short of proving that the offer was accepted by the appellees, or that the minds of the parties met in a concluded agreement to buy and sell.

Moreover, the allegations in the bill of complaint, in no aspect of the case, can be said to satisfy the requirements of the statute of frauds, because they show on their face that the underlying oral contract which is sought to be enforced was not entered into.

" * * * The statute of frauds is not satisfied * * * by a writing which recites the receipt of an offer but does not state that it is accepted or admit the contract sought to be enforced; * * *." 37 C. J. S., Frauds, Statute of, section 180, p. 664 .

We are of opinion that the decree complained of is plainly right and accordingly it is

*Affirmed.*