# Richmond

ROBERT M. FANNEY, JR., AND RESIDENTIAL-COMMERCIAL MORTGAGE
CORPORATION v. VIRGINIA INVESTMENT AND MORTGAGE CORPORATION,
ET AL.

March 16, 1959.

Record No. 4871.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*William C. Worthington* (*Worthington, White & Harper*, on brief), for the appellants.

*William L. Parker*, for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

Virginia Investment and Mortgage Corporation, its officers, directors and stockholders, hereinafter referred to as the complainants, filed their bill in equity against Robert M. Fanney, Jr., and Residential-Commercial Mortgage Corporation, hereinafter referred to as the defendants, alleging that in January, 1956, "negotiations were entered into" between Fanney and certain of the complainants with a view to consolidating the businesses of the two corporations under Fanney's management; that "before any agreement had been reached between the parties," and before Fanney had been elected a director or officer of Virginia Investment and Mortgage Corporation, he had taken "active charge" of the latter's business, had paid himself a salary of $7,500 per year from the funds of the corporation, had taken charge of its books and records, and had refused to return them to the directors of the corporation.

The prayer of the bill was that the court determine by a declaratory judgment whether a contract of employment had been consummated between Virginia and Fanney, and by way of consequen-

tial relief that a mandatory injunction issue directing Fanney to deliver to Virginia its books and records and make an accounting to it.

Fanney and Residential filed an answer and cross bill, alleging that it had been firmly agreed between the officers, directors and stockholders of the two corporations that by an exchange of common stock the stockholders of each corporation would have a one-half interest in the other and that the two corporations would be operated jointly under Fanney's direction; that Fanney was employed by Virginia as its executive vice-president for a period of ten years at a stated salary of $7,500 per year, increasing over the period; and that his employment could be terminated "only for good and sufficient cause upon a vote of a majority of the board of directors" of Virginia. The cross bill further alleged that except for the required exchange of stock this agreement was put into full operation and effect and continued from January, 1956, until May, 1957, when certain of the complainants had attempted to revoke Fanney's authority as an officer of Virginia and remove him from office.

The prayer of the cross bill was that a declaratory judgment be entered declaring (1) that Fanney "is and remains the duly constituted executive vice-president" of Virginia and entitled to full control of the management of that corporation and Residential, and that he be restored to such control; (2) that the complainants be required to perform specifically the agreement for the exchange of common stock of the two corporations; and (3) that after the proper exchange of the stock a meeting of the stockholders of Virginia be held for the purpose of electing a new board of directors.

The complainants filed an amended and supplemental bill of complaint, alleging that Fanney had been "removed as executive vice-president and as officer and agent of the corporation" by a resolution of the board of directors at a meeting held on May 1, 1957.

In their answer to the cross bill the complainants asserted among other things that the "several supposed promises and undertakings" relied on by the defendants were promises not to be performed within one year, were not in writing, and were unenforceable under the statute of frauds. Code, § 11-2.

In the meantime Fanney had filed a motion for judgment against Virginia to recover the sum of $1,500, alleged to be due him on account of his agreed salary from February 15 to April 15, 1957. By agreement of the parties, this action at law was consolidated and heard along with the equity suit.

After an ore tenus hearing the trial court entered the decree complained of. The decree makes these findings and adjudications: (1) Virginia "employed the defendant," Fanney, for the period beginning January 1, 1956 and ending May 1, 1957, at the annual salary of $7,500, and he is due the sum of $10,500 for this period and should be credited with the amount in the accounting directed to be had between the parties; (2) "any employment or relationship" which Fanney theretofore had with Virginia was terminated by the action of its board of directors at the meeting held on May 1, 1957, subject to his right of action for wrongful discharge; (3) Fanney is "perpetually enjoined and restrained from holding himself out as an officer, agent, or representative" of Virginia, from acting in its behalf and from "interfering with its affairs," and is directed to deliver to that corporation all of its books, records and funds in his possession or under his control; (4) "the contract proven by the defendants * * * to exist between them and * * * Virginia * * * is a single, indivisible undertaking, the several provisions of which are not separable, and is a contract not to be performed within a year which is unenforceable under the provisions of the statute of frauds, and for this reason the cross bill * * * is dismissed with prejudice."

The decree then provides for a reference to a commissioner in chancery to state and settle the accounts between Fanney and Residential, on the one hand, and Virginia on the other.

In their assignments of error the defendants contend that the trial court erred in dismissing their cross bill and denying their prayer for specific performance of the contract for the exchange of stock in the two corporations, and in decreeing that Fanney had been lawfully removed as executive vice-president and officer of Virginia, and in enjoining him from holding himself out as such.

The material facts may be stated thus: Residential was organized in 1954 by Fanney, who was the sole stockholder, for the purpose of carrying on a brokerage mortgage business in the city of Norfolk and vicinity. Fanney had previously been employed in a like business, had gained considerable knowledge and experience therein, and developed valuable contacts with customers in that field. He was successful in the operation of Residential.

Virginia had been organized about the same time as Residential and had been engaged in a similar business in the city of Portsmouth. Richard J. Davis, a member of the Portsmouth bar, was its president, and H. Linwood Atkinson was its secretary and manager. In the

latter part of 1955 Atkinson resigned and Virginia's operations were at a standstill for lack of a suitable executive.

At that time the board of directors of Virginia consisted of Davis, its president, J. J. Garner, Jr., and W. C. Crocker. In addition to these, its stockholders were George T. McLean, a successful business-man in Portsmouth and the father-in-law of Davis, Mrs. Davis, and Highland Biltmore Corporation.

Shortly after Atkinson's resignation McLean and Davis approached Fanney with a view of employing him as manager of Virginia. Fanney was not interested in such employment, but expressed an interest in the consolidation of the operations of that corporation and those of Residential under his direction as the principal executive. This consolidation appealed to Fanney because Residential had a net worth of approximately $15,000, while Virginia had a net worth of $100,000. Thus, he thought the added net worth of Virginia would enable the two corporations to carry on their joint business more effectively.

Fanney testified that after negotiations between him, McLean and Davis, it was finally agreed that the consolidation of the two corpora-tions would be effected as of January 1, 1956, by the exchange of stock in the manner alleged in the cross bill; that the stockholders of Virginia would receive $100,000 of preferred stock in that cor-poration; that he, Fanney, would be elected executive vice-president of Virginia and employed for a period of ten years in general charge of the joint operation of the two corporations, at a salary beginning at $7,500 per year and increasing over the period up to a maximum of $12,000 per year, and could be removed from office only for cause and by a majority vote of the boards of directors of the two corporations.

He said that in furtherance of this plan it was also agreed that he was to have 50% of the representation on the board of directors of each corporation and the stockholders of Virginia were to have the other 50% of such representation. Fanney also testified that it was agreed that Davis, president of Virginia and a member of the bar, was to attend to the details of effecting this agreed exchange of stock, and for this purpose the corporate records of Residential were turned over to Davis.

The evidence on behalf of the complainants was that while these terms and provisions were discussed there was no final meeting of

the minds of the parties with respect to them resulting in a binding contract or contracts.

However, the minutes of the board of directors of Residential show that at a meeting held on January 3, 1956, the agreement between that corporation and Virginia was ratified, and Davis, the president of Virginia, was elected vice-president of Residential.

The minutes of a special meeting of the board of directors of Virginia, held on January 12, 1956, show that its president announced "that tentative plans had been concluded" for the joint operation of that corporation with Residential. The minutes also show the authorization of an amendment to the charter of Virginia creating the preferred stock in the amount of $100,000, to be distributed to the present stockholders of Virginia. They also show that one-half of the common stock of Virginia was to be exchanged for one-half of the common stock of Residential.

Later, on the same day, there was a special meeting of the stockholders of Virginia, at which all were present either in person or by proxy, and the details of this agreement, as alleged in the cross bill and testified to by Fanney, were spelled out in the minutes and approved. An amendment to the charter providing for the issuance of preferred stock in the amount of $100,000, to be distributed to the stockholders of Virginia, was authorized. The board of directors was "authorized to employ" Fanney as the executive vice-president of Virginia for the period and on the terms testified to by him, with the further recital that his employment prior to the expiration of his contract could be terminated "only for good and sufficient cause and upon a vote of a majority of the board of directors." Amendments to the by-laws creating the office of "executive vice-president" and embodying the necessary changes to carry out the corporation's agreement with Fanney were effected.

In the meantime Fanney had taken over the joint operation of the two corporations as of January 1, 1956. Copies of the resolutions adopted by the board of directors and stockholders of Virginia on January 12 were turned over to Fanney and used by him in arranging credit for it with certain banks. Accountants were employed to set up proper bookkeeping arrangements between the two corporations. The amendment to the charter of Virginia, authorizing the issuance of preferred stock in the sum of $100,000, was approved by the State Corporation Commission on February 3.

On February 6 there was a special meeting of the board of direc-

tors of Virginia which passed a resolution giving Fanney authority as executive vice-president to carry on for the corporation the necessary banking operations with the Seaboard Citizens National Bank of Norfolk, including the authority to countersign checks and to borrow money. Similar meetings were held on May 5, July 23, and August 27, recognizing Fanney as executive vice-president and broadening his authority over the corporate finances. On February 14, Virginia, through Davis, its president, wrote a letter to Bayside Federal Savings & Loan Association, one of its correspondents in New York, setting forth the terms of the engagement of Fanney as executive vice-president of Virginia.

Pursuant to his authority, during the year 1956 Fanney placed numerous loans in the name of Virginia with customers who had been exclusively his. He opened a Residential office in Portsmouth and, at Davis's suggestion, inserted advertisements in the local newspaper listing Garner and Crocker, directors in Virginia and residents of Portsmouth, as vice-presidents of Residential. Throughout the entire year of 1956 and the early part of 1957, Fanney devoted his efforts and energy to the promotion of the best interests of the joint enterprise.

In January, 1957, a meeting was held between Fanney and the officers and directors of Virginia, at which time the progress of the joint operation was reviewed. McLean, a stockholder in Virginia, was not satisfied with the joint operation and there was some discussion between him and Fanney about dissolving the union. A question was raised as to the manner in which the books of the two corporations were being kept under Fanney's direction and which, it was said, had resulted in the dishonoring of two checks of Virginia in May and June of the previous year. This meeting broke up without any definite arrangement about discontinuing the joint operation of the two corporations.

On March 6, without notification to Fanney, Virginia, through its president, wrote the Seaboard Citizens National Bank of Norfolk that the board of directors of Virginia had rescinded its authority to Fanney to deal with the bank. This was followed shortly by similar letters to other banks terminating Fanney's authority to deal with them on behalf of the corporation.

In the meantime the agreement for the exchange of stock and the reorganization of the board of directors of Virginia had not been

carried out, and despite Fanney's demands the stockholders of Virginia refused to perform the agreement.

On May 1, after the present equity suit had been instituted, Davis, Garner and Crocker, acting as the board of directs of Virginia, held a meeting and adopted a resolution whereby Fanney was "removed as executive vice-president and officer and agent of the corporation" in the best interests of the corporation pursuant to Code, § 13.1-46.[1]

While there was some testimony at the trial that the books and records of the two corporations were not properly kept under Fanney's direction, there was no evidence that for this reason, or for any mismanagement, he was removed from office and the consolidation abandoned. Those in control of Virginia testified that the project was abandoned because it had not proved profitable, and for the further reason that the Internal Revenue Service had advised them in May, 1956, that payment made to the stockholders of Virginia in redemption of the preferred stock would be treated and taxed as income which would result in a considerable tax liability on these stockholders.

The position of the defendants, the appellants here, is that the evidence shows that there was a meeting of the minds of the parties, resulting in two closely related valid and enforceable contracts, (1) the contract between Fanney and Virginia for his employment as executive vice-president which has not been lawfully terminated, and (2) the contract between the stockholders of the two corporations for an exchange of stock under which Fanney is entitled to one-half of the common stock of Virginia and an equal representation on its board of directors, which agreement he is entitled to have specifically performed.

If we correctly interpret the contentions of the complainants, the appellees here, they are twofold: (1) While there were preliminary negotiations on the subject of these contracts, there was no meeting of the minds of the parties which resulted in a binding contract or contracts; (2) even if there is sufficient parol evidence to show the consummation of the supposed contract or contracts, under the statute of frauds (Code, § 11-2) they are not enforceable because

---

[1] This section of the Virginia Stock Corporation Act of 1956, ch. 428, p. 506, provides that "Any officer or agent may be removed with or without cause at any time whenever the board of directors in its absolute discretion shall consider that the best interests of the corporation would be served thereby. * * * Any such removal shall be without prejudice to the recovery of damages for breach of the contract rights, if any, of the person removed. * * *"

they are contracts not to be performed within a year and are not supported by the required signed memoranda in writing.

We find that the record fully sustains the position of the defendants, the appellants.

█ The contention of the complainants that there was no meeting of the minds of the parties with respect to Fanney's employment is predicated upon the fact that under the resolution of the stockholders at the January 12, 1956, meeting, the board of directors were merely "authorized to employ" Fanney on the stated terms, and there was no showing that the board adopted a formal resolution in execution of this authority.

There is no merit in this contention. It is well settled that a formal resolution of a board of directors is not essential to the showing of corporate assent to an agreement authorized by the stockholders. Such assent will be implied where the corporation has ratified the agreement and accepted its benefits. *Altavista Cotton Mills* v. *Lane*, 133 Va. 1, 15, 16, 112 S. E. 637; *Kennerly* v. *Columbia Chemical Corp.*, 137 Va. 240, 247, 248, 119 S. E. 265; 19 C. J. S., Corporations, § 1134, p. 704. Here the uncontradicted evidence is that Fanney's contract of employment by Virginia was put into effect and carried out for more than a year. During that time Virginia held him out as its lawfully employed officer and accepted the benefits of its agreement with him. Clearly, this was a ratification of the agreement.

Furthermore, in its amended bill Virginia avers that Fanney was, by the action of its board of directors, removed from office as executive vice-president and officer and agent of the corporation on May 1, 1957. How could he have been removed from office if he had never been elected and installed as such?

But that it not all. As has been said, the trial court in its decree "finds that the complainant Virginia Investment and Mortgage Corporation employed the defendant Robert M. Fanney, Jr., for the period beginning January 1, 1956 and ending May 1, 1957." There was no cross-appeal and this finding is conclusive on this appeal.

█ Similarly, it clearly appears from the evidence that there was a meeting of the minds of the stockholders of the two corporations with respect to the exchange of stock. This contract was a vital factor in Fanney's contract of employment, for it insured him an equal representation on the board of directors of Virginia and was designed to prevent his dismissal without just cause, the very thing, he says, the corporation has attempted to do. If there was a meeting

of the minds of the parties as to the contract of employment, there was necessarily a consummation of the agreement for the exchange of stock. Indeed, in a letter written by Davis on December 22, 1955, on behalf of the stockholders of Virginia to Fanney's attorney, it was clearly stated that the parties had reached an agreement on the matter.

We do not agree with the trial court's holding that Fanney's contract of employment, being incapable of performance within a year, was unenforceable under the statute of frauds. The stockholders' resolution of January 12, 1956, signed by the duly elected secretary of Virginia, spelled out in detail all of the essential parts of the agreement and was a sufficient memorandum to satisfy the requirement of the statute. It is universally held that such corporate minutes which embody the essentials of a contract are a sufficient memorandum to satisfy the statutory requirement. *Central Land Co.* v. *Johnston,* 95 Va. 223, 224, 225, 28 S. E. 175; *Newport News, etc., Co.* v. *Newport News Street R. Co.,* 97 Va. 19, 21, 32 S. E. 789; Williston on Contracts, Rev. Ed., Vol. 2, § 568, pp. 1621, 1622; Fletcher Cyclopedia, Corporations, Perm. Ed., Vol. 5, § 2206, p. 727 *ff.*

The fact that the stockholders' resolution contemplated ratification by the action of the board of directors does not detract from its sufficiency as a memorandum to satisfy the statute. As we pointed out in *Browder* v. *Mitchell,* 187 Va. 781, 785, 48 S. E. 2d 221, 223, the memorandum relied on need not itself constitute a contract. It is the underlying oral contract of which the memorandum is an accurate statement which is enforced.

The contract between the stockholders of the two corporations for the exchange of stock is not within the statute of frauds. Unlike the closely related contract of employment, it was capable of performance within a year. Indeed, it was intended to be performed forthwith.

The remedies available to Fanney under the two contracts are quite different. A court of equity will not entertain a suit for specific performance of a contract for personal services. 17 Mich. Jur., Specific Performance, § 66, pp. 101, 102. Nor does Fanney ask for that relief. In his cross bill he prays for a declaratory judgment declaring that his contract of employment has not been lawfully terminated and that he is still the duly constituted executive vice-president of Virginia.

On the other hand, a court of equity will, in a proper case, decree specific performance of a contract for the exchange of stock. It is generally held that where, as here, the stock is not readily purchasable in the market and its pecuniary value is uncertain and not easily ascertainable, specific performance of a contract for its sale or exchange will be enforced. See *Kennerly* v. *Columbia Chemical Corp.*, *supra*, 137 Va., at page 245; 17 Mich. Jur., Specific Performance, § 70, p. 107; 49 Am. Jur., Specific Performance, § 131, p. 154. This is especially true where, as is the case here, the purpose of the contract is to prevent the control of the corporation by antagonistic interests. 49 Am. Jur., Specific Performance, § 132, pp. 155, 156.

It follows from what has been said that the trial court erred in dismissing the defendants' cross bill and in denying the relief therein prayed for. The complainant stockholders of Virginia should have been required to perform specifically their contract for the exchange of stock. Prior to the performance of this contract and the reorganization of the board of directors of Virginia in accordance with the terms of the agreement, the former board of directors had no power or authority to terminate Fanney's contract of employment and remove him from office.

Accordingly, the decree appealed from will be reversed and the cause remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*