**Dorothy F. HEWITT and Abram S. Hewitt, Plaintiffs,**

v.

**Charles G. HUTTER and Luigi Gentile, Defendants.**

**Civ. A. No. 74–35(H).**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Nov. 17, 1975.

105, 107 (S.D.N.Y.1961). *See also Lisena v. California*, 314 U.S. 219, 228–29, 62 S.Ct. 280, 86 L.Ed. 166 (1941).

J. Sloan Kuykendall, Kuykendall, Whiting & Costello, Winchester, Va., and Gilbert McKown, Berryville, Va., for plaintiffs.

James E. Farnham, Hunton, Williams, Gay & Gibson, Richmond, Va., for defendants.

## OPINION and ORDER

DALTON, District Judge.

This is a diversity action concerning a Virginia real estate contract, thus Virginia law controls. *Sterling v. Blackwelder,* 302 F.Supp. 1125 (E.D.Va.1968), *aff'd* 414 F.2d 1362 (4th Cir. 1969). The case is before this court on Defendants' Motion for Summary Judgment, which the court is of the opinion, should be and hereby is denied for reasons to be set forth below.

In early 1974 Charles Tijerina, acting in a representative capacity for defendants, began negotiations with Mrs. Dorothy Hewitt over the purchase of her farm, "Long Branch." After some pre-

liminary sparring over the purchase price, serious negotiations resulting in an oral agreement occurred on February 20, 1974, during a meeting at the Red Fox Inn in Middleburg, Virginia. During these negotiations Mrs. Hewitt became aware of the documentation authorizing Tijerina to enter into the negotiations at hand. These documents included 1) a letter from defendants addressed to "To Whom It May Concern" introducing Mr. Tijerina as "our Agent-in-Fact, to represent us with full powers, and complete and absolute discretion. . . . He can negotiate in our behalf, enter into agreements, and take options." (Plaintiffs' Exhibit 1); 2) a letter from defendants to Tijerina containing the statement: "Enter into contract, and advise us as soon as you reach an agreement." (Plaintiffs' Exhibit 2); 3) a letter from defendants to Tijerina authorizing him to select an attorney to consummate any transaction being negotiated (Plaintiffs' Exhibit 3); 4) a general and special Power of Attorney, which together authorized Tijerina to negotiate and agree on a purchase of "Long Branch" farm (Plaintiffs' Exhibits 4 and 5); and 5) a letter from defendants to Tijerina authorizing him to offer as much as $950,000.00 for the purchase of "Long Branch" farm (Plaintiffs' Exhibit 6). Agreement was reached by Tijerina and Mrs. Hewitt during the negotiations at the Red Fox Inn and the next day (February 21, 1974) during telephonic conversations. The agreement included the purchase price of "Long Branch" farm and the personal property which was to go with the farm.[1] Tijerina and Mrs. Hewitt then turned to their lawyers to put the agreement into contract form.

After several drafts a Contract for Sale was approved and executed by plaintiffs. (Plaintiffs' Exhibit 8). Tijerina then wrote a letter dated March 1, 1974, which was intended as a cover (or transferral) letter for the Contract for Sale. The letter was addressed to plaintiffs' real estate broker and stated in material part:

> After so many tried to put the contract in a form that is mutually agreeable to all, we have finally accomplished today, a contract that has all the requisites that I required.
>
> .     .     .     .     .
>
> I realize that having them sign first is unusual, but it is my desire that my principles [sic] sign for themselves as a courtesy to them     .     .     .
>
> .     .     .     .     .
>
> Since I approve the contract as to form, terms and conditions, on behalf of my principles, by virtue of the authority vested in me, it is acceptable to me     .     .     .     and you may inform Mr. and Mrs. Hewitt that we have a deal, and that the loan commitment has verbally been approved.
>
> .     .     .     .     .

Plaintiffs' Exhibit 7.

Tijerina then carried the Contract for Sale to California for defendants to sign, which they failed to do. Defendants' Motion for Summary Judgment rests upon the basis that paragraph 20 of the Contract for Sale causes the document to actually be an offer. For acceptance, defendants' signatures and a return of the Contract for Sale to sellers with a certified or cashier's check for $95,000.00

---

1. *Hewitt deposition,* pp. 63–67. In particular on p. 63:
    "We worked out all the details of the contract."
  And on p. 64:
    "The main thing was the price, and once that had been agreed upon, I considered that we had a contract . . . ."
  *Tijerina deposition,* p. 39:
    "I had agreed with her at the meeting I had had at the Fox [on February 20, 1974], and

then a more thorough agreement the next day [telephonically] when I was sure of the things that went with the farm or didn't go with the farm. And, that is why I went to the attorney to ask him to write a contract."
  And on p. 42:
    ". . . It was my understanding I had reached an agreement with Mrs. Hewitt . . . ."

to sellers is required. Since there has been no such acceptance, there is no contract.

Charles Tijerina's authority underlies any discussion as to whether a valid contract exists. Thus, an examination of defendants' fifth defense—that "Charles Tijerina did not have authority to bind defendants to the contract alleged by plaintiffs to exist . . . and . . plaintiffs knew that Charles Tijerina did not have the authority to bind defendants . . . ." (Defendants' Answer at 6)—is warranted. The court holds defendants' allegation wholly without merit. A stronger case of authorized action by an agent could not be imagined. The pertinent documentation of Tijerina's authority is found in the statement of facts. *Supra*, at 977–978.

■ A recent case on this point is *Lacey v. Cardwell*, 216 Va. 212, 217 S.E.2d 835 (1975). There a real estate agent was authorized to dispose of sellers' land at a public auction subject to confirmation by sellers. But the agreement also expressly authorized the agent to sell the property by private sale prior to the auction if a certain price could be attained. No right of confirmation was reserved over the private sale. The Virginia Supreme Court upheld the agent's authority to enter into a binding agreement with a purchaser at the agreed price without confirmation from sellers. Virginia statutory and case law expressly allows an agent, by his own signature, to bind his principal to a contract covered by the statute of frauds. *Va.Code Ann.* § 11–2 (Repl.Vol., 1973); *Yerby v. Grigsby,* 36 Va. (9 Leigh) 387 (1838).

From the foregoing the court holds as a matter of law that Charles Tijerina had extensive authority in that he could enter into negotiations, reach agreement, prepare a contract, and through use of the Powers of Attorney, sign that contract regarding purchase of "Long Branch" farm. The court further holds that Mrs. Hewitt was aware of this extensive authority from February 20,

1974, at which time she examined the documentation of such authority. The court concludes that Tijerina and Mrs. Hewitt did negotiate, reach agreement and prepare a contract which was signed by Mrs. Hewitt and accepted in full by Tijerina in his cover letter of March 1, 1974.

Defendants make two basic contentions in support of their Motion for Summary Judgment. One denies the existence of a valid contract between plaintiffs and defendants. The second contention assumes the existence of a contract but finds that it fails to satisfy the requirements of the statute of frauds. The court finds there exists a valid contract between plaintiffs and defendants which satisfies the requirements of the Virginia Statute of Frauds. *Va.Code Ann.* § 11–2 (Repl.Vol.1973).

The court bases its findings upon two theories. The first of these theories rests upon a finding of a valid oral contract entered into on February 20–21, 1974, by Charles Tijerina, agent for defendants, and Mrs. Dorothy Hewitt, co-plaintiff in this action. Tijerina's March 1, 1974, cover letter [hereinafter cover letter] and the Contract for Sale constitute the written memorandum which embodies the earlier oral agreement. The second theory, in the alternative, finds a valid contract composed of the same two documents—the cover letter expressly incorporating the Contract for Sale. Under the second theory Tijerina's signature on the cover letter constitutes the valid execution required by paragraph 20 of the Contract for Sale.

■ The depositions of Mrs. Hewitt and Tijerina satisfy this court that, as a matter of law, a meeting of the minds occurred during the two conversations between Mrs. Hewitt and Tijerina on February 20–21, 1974.[2] At this point only an oral contract for the purchase of real estate existed. A contract for purchase of real property is covered by the Virginia Statute of Frauds. *Va. Code Ann.* § 11–2 (Repl.Vol.1973). The

**2.** See Note 1.

Virginia Statute of Frauds only prohibits judicial enforcement of certain contracts, *Id.*; it does not render them void at their inception, except in certain situations.[3] *Va.Code Ann.* § 11–1 (Repl.Vol. 1973). Thus, a valid oral contract may exist until avoided by the statute of frauds properly pleaded. That oral contract may be enforced if there is a sufficient memorandum in writing to satisfy the statute of frauds. *Browder v. Mitchell,* 187 Va. 781, 48 S.E.2d 221 (1948); *accord, American Surety Co. of New York v. Commonwealth,* 180 Va. 97, 21 S.E.2d 748, 752–3 (1942) (oral insurance contract upheld by receipted bills for paid premiums, signed by authorized agent of surety company); *Fanney v. Virginia Investment and Mortgage Corp.,* 200 Va. 642, 107 S.E.2d 414, 420 (1959) (oral employment contract upheld by stockholder's resolution signed by duly elected secretary of corporation). *Browder* sets out the elements, purpose and operation of the written memorandum:

> It is, of course, well settled that the whole contract need not be embodied in the memorandum relied upon. *Reynolds v. Dixon,* 187 Va. 101, 106, 46 S.E.2d 6, 8. But there must be an underlying complete oral agreement for the sale and purchase of the land.

> As is said in *Williston on Contracts,* Rev.Ed., Vol. 2, § 567, pp. 1618–19, "The memorandum need not itself constitute a contract, and apart from its effect as a memorandum, it need have no legal operation. There must be a valid oral contract, however, of which the memorandum is an accurate statement, though not necessarily made with that intent."

> In other words, "It is the oral contract which is enforced, but it can be enforced only when the statute has been satisfied." *Williston on Contracts,* Rev.Ed., Vol. 2, § 590, p. 1701.

> In *Donald Friedman & Co. v. Newman,* 255 N.Y. 340, 174 N.E. 703, 704,

73 A.L.R. 95, 97, the principle is thus stated: ". . . Except as evidence of the oral contract, the memorandum has no force or effect, unless and until the oral contract has been established by a preponderance of evidence. Then, if accurate and complete, it prevents the interposition of the statute of frauds as a bar to the enforcement of the oral contract."

48 S.E.2d at 223–4.

It has also been generally held that ". . . a letter confirmatory of a prior oral agreement will generally constitute a sufficient memorandum [to satisfy the statute of frauds]." 72 *Am.Jur.*2d, *Statute of Frauds* § 299 (1974). In *Irving v. Goodimate Co.,* 320 Mass. 454, 70 N.E.2d 414, 171 A.L.R. 326 (1946), certain letters were written to plaintiff. These letters referred to earlier oral conversations relating to terms of an employment contract. When these terms were not met, plaintiff sued his employer, which pleaded the statute of frauds. The court said:

> The plaintiff's contract of employment was for more than a year and was unenforceable unless evidenced by a written memorandum containing the essentials of the oral contract. [Citations] The first letter continued the existing employment of the plaintiff for 1940 and after at an increased compensation. The second letter extended his employment through 1941, at the same time extending his territory. Both letters could be found to be confirmations of the existing oral contract of employment and to contain all the essentials of the contract. [Citations]

171 A.L.R. at 332.

The analogy to the case at bar seems clear. The plaintiffs' oral contract was for the sale of real estate and was unenforceable unless evidenced by a written memorandum containing the essentials of the oral contract. The cover letter and the unexecuted Contract for Sale set

---

**3.** Oral contracts covered by the Virginia Statute of Frauds are void only as to purchasers for value without notice and creditors. *Va. Code Ann.* § 11–1 (Repl.Vol.1973).

forth the terms of the sale. Those terms were accepted by Tijerina's signature on the cover letter. The letter could be found to be a confirmation of the existing oral contract for the sale of real estate and, together with the referenced unexecuted Contract for Sale, contained all the essentials of the contract. In support of this reasoning is *Chesapeake & O. Ry. Co. v. Williams Slate Co.,* 143 Va. 722, 129 S.E. 499 (1925), *dismissed on appeal,* 269 U.S. 540, 46 S.Ct. 202, 70 L.Ed. 401 (1926), wherein the Virginia Supreme Court stated:

> The Whitcomb letter is not claimed to be the contract under which appellant took possession of the right of way. It purports to be the reduction to writing of a previous understanding between the parties relative to the terms and conditions under which the Williamses were to donate a right of way through their tract of 250 acres. This is made apparent by reference to Mr. Axtell's letter . . ., addressed to J. R. Williams & Co., in which he says:
>
>> "The enclosed letter [the Whitcomb letter] expresses the purposes we have discussed and the *conclusions reached . . ."*
>
>> "The whole question is one of intention. If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; but the parties must be fully agreed, and must intend the agreement to be binding." *Boisseau v. Fuller,* 96 Va. 45, 30 S.E. 457.

*Id.* at 501.

The foregoing statements of law persuade this court that the terms of the memorandum are not its important feature. The memorandum simply memorializes the oral agreement and provides a written document (or documents) upon which the parties may signify their adherence to the oral agreement.

■ This reasoning, applied to the case at bar, results in a finding that paragraph 20 of the Contract of Sale, upon which defendants rely so heavily, is meaningless. The paragraph contains terms which mean nothing to either Mrs. Hewitt or Tijerina and certainly do not embody anything orally agreed upon.[4] It was added by an attorney for defendants, who attempted to delay binding defendants to a contract to which the court now finds them already bound by their agent, Tijerina.[5] The court thus finds as a matter of law that defendants, through their agent, Tijerina, entered into a valid oral contract memorialized in the Contract for Sale and executed by Tijerina's signature on the cover letter which referred to and incorporated the Contract for Sale.

■ As an alternative to finding an oral contract memorialized by a later written memorandum, the court also finds as a matter of law that the documents which compose the written memorandum under the first theory can also be construed to represent a valid written contract which satisfies the requirements of the statute of frauds.

An express reference in a writing signed by the party to be charged, to another writing, has the effect of in-

---

4. *Hewitt deposition,* p. 91:

"Q. . . . If the agreement which you and Mr. Tijerina verbally reached on February 20 had been accurately reduced to writing, it would not have included paragraph 20?"

"A. It would not."

*Tijerina deposition,* p. 41:

"Q. Now do you remember this paragraph 20 of the contract, Exhibit 8?"

"A. Yes, sir, I remember reading that, yes."

"Q. Did you request that the attorney put that in the contract?"

"A. No, I didn't request that . . . ."

And on p. 60:

"Q. Then, you don't know how it [paragraph 20] got in there?"

"A. I don't know."

5. Defendants' position regarding Underwood's authority is of no importance under this theory of the case. Whatever authority he possessed it was definitely not sufficient to override Tijerina's prior authorized oral agreement.

corporating the writing thus referred to in the memorandum notwithstanding that the other writing is not signed by the party to be charged. Letters signed by persons to be charged may, although they do not contain any of the terms of the contract, constitute a sufficient memorandum thereof under the statute of frauds where they refer specifically to letters of the other party which state the terms of the agreement.

72 *Am.Jur.*2d, *Statute of Frauds*, § 372 (1974).

In the case of *Beckwith v. Talbot*, 95 U.S. 289, 24 L.Ed. 496 (1877), there was a contract required by the statute of frauds to be in writing which was not signed by defendant. The required signature and recognition of the contract by defendant was obtained from letters written by defendant wherein he repeatedly referred to "the agreement." Although there seems to be no need to use parol evidence to identify what contract Tijerina was referring to in his cover letter, the following reasoning conclusively answers such a contention should it be raised:

It is undoubtedly a general rule that collateral papers, adduced to supply the defect of signature of a written agreement under the Statute of Frauds, should on their face sufficiently demonstrate their reference to such agreement without the aid of parol proof. [Citations] There may be cases in which it would be a violation of reason and common sense to ignore a reference which derives its significance from such proof. If there is ground for any doubt in the matter, the general rule should be enforced. But where there is no ground for doubt, its enforcement would aid, instead of discouraging, fraud. Suppose an agreement be made out and signed by one of the parties, the other being absent. On the following day the latter writes to the party who signed it as follows: "My son informs me that you yesterday executed our proposed agreement as prepared by J. S. I

write this to let you know that I recognize and adopt it." Would not this be a sufficient recognition especially if the parties should act under the agreement? And yet parol proof would be required to show what agreement was meant. The present case is as strong as that would be . . . .

*Id.* at 292; *quoted with approval, Texas Co. v. Northrup*, 154 Va. 428, 153 S.E. 659, 662 (1930).

Other Supreme Court decisions support the court's finding of a valid contract from two or more separate documents. In *Ryan v. U. S.*, 136 U.S. 68, 10 S.Ct. 913, 34 L.Ed. 447 (1890), the court dealt with a contention that there was an insufficient description of the land in question upon which to base a valid contract. The court affirmed that:

the principle is well established that a complete contract, binding under the statute of frauds, may be gathered from letters, writings, and telegrams between the parties relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract.

*Id.* at 83, 10 S.Ct. at 918, *citing Beckwith v. Talbot, supra.*

In *Bayne v. Wiggins*, 139 U.S. 210, 11 S.Ct. 521, 35 L.Ed. 144 (1891), the court held that a defendant/purchaser's agent's letter which requested delivery of a properly acknowledged deed (the first deed not being properly acknowledged although fully describing the land sold) and referred to the letter from plaintiff/sellers which contained the financial terms of the transaction (as well as enclosing the first deed), embodied a definite statement of the contract as made by the parties, both as to property to be conveyed, and as to the terms of payment. The agent's letter taken together with the first deed and letter from plaintiffs, constituted a sufficient memorandum, signed by both parties or their agents, to take the case out of the statute of frauds.

The three foregoing Supreme Court cases correctly state the general law as

it pertains to fact situations quite similar to the one before this court. The Virginia Supreme Court aligned itself with the Supreme Court in the case of *Darling v. Cumming*, 92 Va. 521, 23 S.E. 880 (1896). In that case plaintiff sought to use testator's will to refer to the unsigned contract for the sale of real estate. The court denied plaintiff's request for specific performance on the grounds of laches and the ambiguous nature of the reference in the will (an "understanding" between testator and plaintiff). In its discussion the court stated:

> It is well settled that where the memorandum of the bargain between the parties is contained in separate pieces of paper, and these papers contain the whole bargain, they form together such a memorandum as will satisfy the statute [of frauds], provided the contents of the signed paper make such reference to the other written paper or papers as to enable the court to construe the whole of them together as constituting all the terms of the bargain. . . . It is not necessary that the signed paper should refer to the unsigned paper as such. It is sufficient to show that a particular unsigned paper, and nothing else, can be referred to, and parol evidence is admissible for that purpose. [Citations]

*Id.*

■ Defendants contend, and rightly so, that if plaintiffs' Exhibit 8, the Contract for Sale, is considered as the contract (or that document stating the terms of the contract) then its terms must be complied with—in particular the terms of paragraph 20.[6] Accepting, as the court must under this theory, defendants' contention that the Contract for Sale was merely an offer by sellers, the court finds that that offer was accepted by defendants' duly authorized agent.[7] The acceptance required by paragraph 20 was satisfied by defendants' agent's signature on the cover letter to the Contract for Sale, in which Mr. Tijerina approved and accepted the form, terms and conditions of the Contract for Sale.

■ Defendants contend that acceptance was not effective until the buyers executed the contract *and* returned the Contract for Sale to sellers with a certified or cashier's check for ninety-five thousand dollars ($95,000.00). Their argument continues that since there has been no return of the Contract for Sale to sellers with the payment of $95,000.00, there has been no acceptance. This last provision of paragraph 20 inures to the sellers' benefit. The payment of $95,000.00 was an obligation of buyers under the contract apart from acceptance. The payment even by paragraph 20 terms constituted a deposit. The deposit possesses its own importance. It represents buyers' good faith in entering into the transaction and is to be treated as liquidated damages in the event of non-performance by buyers. It can by no means be said that payment of the deposit is clearly and unequivocally a part of the acceptance of this contract by buyers. Paragraph 20 could be construed to say that acceptance is attained by buyers' execution of the Contract for Sale, after which it will then be returned to sellers with the check representing the deposit. This construction (to the extent that payment of the deposit is not part of the acceptance procedure) is supported by the language of paragraph 2, wherein sellers acknowledged receipt of the $95,000.00 when they signed the Contract for Sale on March 1, 1974. Such language implies payment of the deposit prior to acceptance by buyers. Thus the terms of paragraph 2 and paragraph 20 seem

---

6. "It is understood and agreed that Seller has executed this contract in advance and it shall constitute an offer to sell until such time as it has been accepted by the Buyer by their execution hereof and returned to Seller along with a certified or cashier's check in the amount of Ninety Five Thousand Dollars ($95,000.00) representing the deposit hereinbefore mentioned."

7. Again the court regards the issue of Underwood's authority as of no importance, since it accepts defendants' view that paragraph 20 transforms the Contract for Sale into an offer.

inconsistent. If the meaning of the contract is *not* clear and unequivocal, the court is at liberty to depart from the express terms of the contract taken out of context and to study the true meaning of those terms as they relate to the entire instrument. *Nelson & Co. v. Development Corp.*, 207 Va. 386, 389, 150 S.E.2d 142 (1966). Therefore, this court construes the requirement of buyers to tender a check for $95,000.00 to sellers as one of independent significance, separate from the buyers' manner of acceptance. The withholding of that payment constitutes a breach of the contract, not a failure to accept it.

The court finds under its second theory of the case and as a matter of law that defendants entered into a valid written contract for the sale of "Long Branch" farm by virtue of the actions of their agent, Tijerina. That contract consists of two documents: the Contract for Sale and the cover letter which incorporates it by reference.

The clerk is directed to send a certified copy of this Opinion and Order to counsel of record.